**UNITED STATES of America ex rel. Clarence COLEMAN, Petitioner-Appellant,**

v.

**Hon. Vincent R. MANCUSI, Warden of Attica State Prison, Respondent-Appellee.**

**No. 227, Docket 33002.**

United States Court of Appeals, Second Circuit.

Argued Nov. 17, 1969.

Decided March 4, 1970.

William C. Sterling, Jr., New York City (Milton Adler and Wachtell, Lipton, Rosen & Katz, New York City, on the brief), for petitioner-appellant.

Arlene R. Silverman, New York City (Louis J. Lefkowitz, Atty. Gen. of the State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., and Karla Moskowitz, Atty., on the brief), for respondent-appellee.

Before LUMBARD, Chief Judge, and DANAHER * and ANDERSON, Circuit Judges.

LUMBARD, Chief Judge.

This is an appeal from an order entered on September 27, 1967, by Judge Burke, denying, without a hearing, Coleman's petition for a writ of habeas corpus. We affirm.

Indicted on a charge of first degree murder for the death of his estranged wife on August 16, 1964, Coleman went to trial before a jury in December of that year, offering a defense that the gun went off accidentally during a struggle. The jury found petitioner guilty of the lesser included offense of first degree manslaughter, and he was sentenced to an indeterminate term of imprisonment of from ten to twenty years, which he is now serving.

After exhausting state remedies, Coleman filed a rather confused petition in the district court. Construing the petition as an attack on the voluntariness of two statements Coleman made while under interrogation by the police and the assistant district attorney, the district court—after a study of the trial record as well as the pre-trial Huntley hearing —found that the statements were voluntarily made and not "the result of coercion, either physical or psychological."

The facts, as found at the pre-trial Huntley hearing in the state court into the voluntariness of the challenged statements, are essentially undisputed. It was found that immediately after his arrest in the early hours of August 16, Coleman was interrogated for six hours, from 3:30 a. m. to 9:30 a. m. During the first phase of the interrogation, which lasted three hours and was conducted by two police officers, Coleman advanced a story that he had found his wife in bed with another man, that a struggle ensued, the other man produced a gun, and that in the melee the gun went off, killing the wife. After sticking to this story for three hours Coleman at 6:30 a. m. told the officers "Okay, I will tell you the truth."

An assistant district attorney, accompanied by a stenographer, then arrived; during the next hour and a half they took a statement from Coleman in question and answer form in which he stuck to the above scenario. At approximately 8:30 a. m. under insistent questioning by the prosecutor as to whether he was telling the truth, Coleman admitted that the statement he had given was only partially true. While reiterating that the gun had gone off accidentally during a struggle with the victim, he admitted that there was no other man. After relating a few additional details of the event, Coleman was taken to the scene of the crime, where he located the gun which he had thrown away after the shooting.

While the questioning lasted six hours, the record does not indicate that Coleman at any time requested that it end or that he asked for food or drink.

* Sitting by designaton.

It is undisputed that no warnings were given before or during the interrogation, Coleman at no time being advised of his constitutional rights. At the Huntley hearing the state judge found both statements to be voluntary, and both were admitted into evidence at the trial.

■ Coleman's trial commenced on December 7, 1964, after Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L. Ed.2d 977 (1964), but before Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966). *Miranda* is thus inapplicable to the extent that it adds additional limitations to the permissible bounds of custodial interrogation. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). Petitioner, however, would read *Escobedo* as requiring the police to inform a person undergoing custodial interrogation of his right to remain silent. In United States v. Feinberg, 383 F.2d 60 (2d Cir.1967), cert. denied, 389 U.S. 1044, 88 S.Ct. 788, 19 L.Ed.2d 836 (1968), a panel of this court rejected the identical contention, and we see no need to reconsider this decision.

■ Coleman next argues that in the totality of the circumstances surrounding his interrogation, including the lack of any warnings, his statements were involuntary. Section 2254(d) of Title 28 puts the burden on petitioner to establish by convincing evidence that the factual determination of voluntariness at a full and fair Huntley hearing is erroneous. 28 U.S.C. § 2254(d); United States ex rel. Allen v. LaVallee, 411 F.2d 241, 244 (2d Cir. 1969). Petitioner failed to meet this burden in the district court. Moreover, the district court judge on an independent reevaluation of the records of the pre-trial hearing and the trial transcript found the statements voluntary. Having conducted the same inquiry, we find that finding amply supported by the record and, in any event, not clearly erroneous. United States ex rel. Rosa v. Follette, 395 F.2d 721, 724 (2d Cir.1968).

There are many motives for confessing, only some of which—such as those stemming from improper psychological or physical pressures from the interrogators—render a statement involuntary. See generally Driver, Confessions and the Social Psychology of Coercion, 82 Harv.L.Rev. 42 (1968). Here, we neither find the interrogators' conduct so coercive or the petitioner so isolated from usual societal reinforcements as to render his statements the product of a will overborne. Rather, in the totality of the circumstances—in which normal psychological drives to confess, reinforced by the pressures of interrogation, contend with the instinct to frame a story that will protect against incrimination—we cannot say the district court's finding that Coleman's decision to make a statement was essentially the product of a free and unconstrained choice was clearly erroneous.

A third point, inartfully but sufficiently raised in the petition, is also urged here. The weapon, a .22 calibre derringer-type pistol, although introduced in evidence, was not the subject of any expert testimony. In his summation, however, the prosecutor stated that the gun had to be cocked before it could be discharged, thereby severely undercutting Coleman's argument that the gun went off accidentally during the struggle. Since the state has the last word on summations in New York, the defense had no chance to respond; defense counsel, however, made no objection to the statement. But see People v. McLucas, 15 N.Y.2d 167, 172, 256 N.Y. S.2d 799, 204 N.E.2d 846 (1965); United States ex rel. Vanderhorst v. La-Vallee, 417 F.2d 411, 412 (2d Cir. 1969).

■ Arguing that the prosecutor in summation was a *de facto* witness offering unsworn testimony about the properties of the weapon, Coleman argues that he was deprived of his constitutional right to cross-examine a witness. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The characteristics of the gun in question, however,

was a perfectly obvious feature which the jury, upon inspection in the jury room, would have immediately discovered. Prosecutorial comment on such an obvious physical feature of an exhibit is proper. For example, a comment on the color of a shirt, in evidence, that had been worn by defendant, after an identification witness puts the color in issue by testifying that he had seen defendant at the scene of the crime in a shirt of the same color, is unexceptionable.

Affirmed.