**UNITED STATES of America ex rel. Warren E. CRONAN, Petitioner-Appellant,**

v.

**Hon. Vincent R. MANCUSI, Warden, Attica State Prison, Attica, New York, Respondent-Appellee.**

**No. 806, Docket 35657.**

United States Court of Appeals, Second Circuit.

Argued April 16, 1971.

Decided June 11, 1971.

Nathan A. Bork, Buffalo, N. Y. (Mattar, Bork, Mattar & D'Agostino, Buffalo, N. Y., of counsel), for appellant.

Amy Juviler, Asst. Atty. Gen. (Samuel A. Hirshowitz, Asst. Atty. Gen., Iris A. Steel, Asst. Atty. Gen., of counsel; Louis J. Lefkowitz, Atty. Gen. of the State of New York, on the brief), for appellee.

Before WATERMAN, SMITH and KAUFMAN, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

The state legal proceedings that have resulted in this federal habeas corpus action had their genesis on a Sunday morning, June 6, 1965, in Niagara Falls, New York. At about 9:05 A.M., Cronan, the petitioner and appellant here, shot his wife in the chest at close range with a shotgun, killing her instantly. Moments later, using the same gun, Cronan severely wounded himself in the left thigh, either accidentally or by design.

A jury convicted Cronan of second degree murder in December 1965, and the following month he was sentenced to a term of twenty-five years to life imprisonment. He now challenges the validity of his conviction on a single ground. Included in the evidence admitted against Cronan at his trial were two verbal confessions which Cronan gave in response to questions of investigating authorities, one immediately following the shootings and the other the morning of the next day, after Cronan had been hospitalized for treatment of his leg injury. Cronan contends that the two confessions were involuntary as a matter of federal constitutional law, contrary to the findings entered by the state trial court after a *Huntley* hearing, People v. Huntley, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965), and by the district court below. Alternatively, petitioner contends that the state proceeding were inadequate to resolve the question of voluntariness and must be supplemented by a federal hearing. On July 24, 1970, Judge Burke denied the petition without a hearing. We affirm.

### I.

We agree with the constitutional standard the petitioner relies upon in seeking to demonstrate that his confessions were involuntary. It is not decisive that Cronan had not established that he was promised anything or that he was in any way harassed, threatened, or otherwise physically or psychologically coerced or intimidated by his interrogators before he confessed. Cronan asserts his confessions may nonetheless be other than the product of his "rational intellect" and "free will" and hence inadmissible. Blackburn v. Alabama, 361 U.S. 199, 208, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960); Lynum v. Illinois, 372 U.S. 528, 534, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963); Townsend v. Sain, 372 U.S. 293, 307, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961). In urging that his confessions were in fact involuntary despite the absence of overreaching by his questioners, Cronan relies primarily on the possible psychological impact of his leg injury and the possible side effects of medicine administered to him during the night and morning prior to the second confession.

We do not dispute the proposition that a person's will may be sufficiently impaired because of his physical condition so as to render any statement he may make to police or other authorities "involuntary" or other than the product of a free will and rational intelligence, despite the scrupulous conduct of the questioners. We also recognize as relevant to the voluntariness of Cronan's pre-*Miranda* [1] statements, the absence of

---

1. The safeguards prescribed by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), apply only to cases in which the trial began after the date of that decision, Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

any indication that Cronan was informed of his rights to remain silent and to have a competent lawyer assist him, or warned that his statements might be used against him in a criminal prosecution. Johnson v. New Jersey, 384 U.S. 719, 730, 86 S.Ct. 1772, 16 L.Ed. 2d 882 (1966); Haynes v. Washington, 373 U.S. 503, 510–511, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963). However, "[n]o single litmus-paper test for constitutionally impermissible interrogation has been evolved," Culombe v. Connecticut, *supra*, 367 U.S. at 601, 81 S.Ct. at 1878. We disagree with petitioner that the undisputed facts disclosed by this record—or the facts as found by the state trial and federal district courts, which are supported by the record—establish that Cronan's confessions were involuntary.

### Prior Proceedings

The *Huntley* hearing was conducted on December 2, 1965, before Judge John V. Hogan of the Niagara County Court, who also presided at Cronan's trial. Four witnesses testified for the state and none for the defense. At the conclusion of the hearing, Judge Hogan ruled orally that Cronan's statements were "voluntarily given without any coercion, no promises of immunity, and no duress." Further testimony bearing on the voluntary nature of Cronan's statements was admitted at Cronan's trial.[2]

On direct appeal from Cronan's conviction, the Appellate Division of the New York Supreme Court found that Judge Hogan had failed to make a determination, required by People v. Huntley, *supra*, that Cronan's admissions were voluntary beyond a reasonable doubt. The case was remanded to the County Court for "specific findings of fact and conclusions of law" to be made without a

rehearing "upon the testimony presented at the preliminary hearing." People v. Cronan, 28 A.D.2d 815, 281 N.Y.S.2d 537 (4th Dept.1967). In accordance with this direction, in 1968 Judge Hogan filed detailed findings as to each of the confessions and concluded that their voluntariness had been proven beyond a reasonable doubt.[3] Judge Burke's findings of fact in the district court below were based on the transcripts of the trial and *Huntley* hearing, the same evidence that was before Judge Hogan in 1968. The two sets of findings correspond in every respect material to this appeal.

### The June 6 Confession

The first witness to arrive at the scene of the killing was Mrs. Cronan's mother, Mrs. Pagano, who had been speaking with her daughter by telephone when the shooting occurred. There then arrived in rapid succession, two neighbors attracted by the shots, and several policemen. Among the policemen was Detective Wilfred V. Garrow, who took charge of the investigation. One of Garrow's first acts was to kneel beside Cronan, who lay wounded beside his dead wife, and, according to Garrow's undisputed testimony:

> "I asked him [Cronan] 'Did you shoot yourself and your wife?' and he said, 'Yes.' I immediately called the officers which were in the kitchen and said 'I would like to have you witness his statement.' I went back to Mr. Cronan, bent down and said 'Mr. Cronan, you are wounded quite seriously and you may die from your wounds.'"

> \* \* \* \* \* \*

> "His reply was 'Yes.' Then I said, 'Did you shoot your wife?' and he said, 'Yes.' And in answer to why he

2. Cronan's lawyer objected to the introduction of the statements at trial on the ground that Judge Hogan could not have reliably determined their voluntariness based on the testimony at the *Huntley* hearing, since many of the witnesses to each of the confessions did not testify

at that hearing. The objection was overruled.

3. Cronan's conviction was then unanimously affirmed without further opinions. People v. Cronan, 32 A.D.2d 742 (4th Dept. 1968), aff'd 26 N.Y.2d 901, 309 N.Y.S.2d 939, 258 N.E.2d 220 (1970).

shot his wife he told me because she had been running around with other men."

■ The entire questioning consumed about two minutes and ceased as soon as an ambulance arrived to take Cronan and his dead wife to the Niagara Falls Memorial Hospital. Cronan's attack on the voluntariness of this statement relies primarily on the fact that Cronan was, concededly, severely wounded.[4] But we disagree with the implied premise of Cronan's theory, that a serious gunshot wound must be presumed to render its victim incapable of exercising free volition and making rational choices. Judge Hogan found on the basis of the testimony of witnesses who had observed Cronan's behavior at the time of his confession, that he was "conscious and alert," that his "mental and physical condition * * * was not such as to impair his power to resist questioning," and that the statement was "the product of a rational mind" and was "freely given." The witnesses who overheard the June 6 confession, most or all of whom testified either at the trial or *Huntley* hearing, did not contradict the testimony of Detective Garrow that appellant was conscious and spoke in a clear voice in response to his questions. Two officers who witnessed the confession testified that Cronan was "wide awake" and appeared to "[know] what was going on."

■ One might suppose that the circumstances surrounding the June 6 statement, including not only Cronan's injury but also the emotional atmosphere that followed in the aftermath of the shootings, would have rendered Cronan more vulnerable than otherwise to suggestions of threat or promise by his interrogators. But it is uncontested that Garrow spoke in a normal voice and that his questions and demeanor in no respect suggested that he attempted to take advantage of Cronan's vulnerable state for the purpose of obtaining a confession or that Cronan could not resist the questioning. On this record, we cannot say that petitioner has sustained his burden of showing "by convincing evidence" that Judge Hogan's factual determinations that Cronan was alert and able to resist questioning were erroneous. United States ex rel. Coleman v. Mancusi, 423 F.2d 985, 987 (2d Cir.), cert. denied, 400 U.S. 842, 91 S.Ct. 84, 27 L.Ed.2d 77 (1970); 28 U.S.C. § 2254(d). Nor can we agree that those facts demonstrate that Cronan's confession was involuntary as a matter of law. To accept that proposition would be equivalent to a holding that a wound, such as Cronan suffered, per se renders the victim incapable of exercising reason. This hypothesis is contrary to common sense and unsupported by cases or other authorities known to us.

### The June 7 Confession

Shortly after ten o'cock on the morning of June 7, or about twenty-five hours after the shootings, Detective Garrow, a Coroner (Ingram), a police lieutenant, and the prosecutor assigned to the case (Hunt), along with a court stenographer, entered Cronan's room at the Niagara Falls Memorial Hospital. After securing the permission of a doctor in attendance, Hunt, Ingram and Garrow questioned Cronan for about

---

4. One of the two neighbors who entered the house where the shooting occurred shortly after Mrs. Pagano testified at the trial that Mrs. Pagano struck two "terrific" blows at Cronan's head with the shotgun used in the shootings before she was restrained by police. Mrs. Pagano admitted attempting to strike Cronan but testified she was stopped before she could deal the first blow. The first policeman on the scene, Andrew Nowak, also denied that Mrs. Pagano struck Cronan on the head, although he admitted that she struck or poked at Cronan's *hand* before Nowak took the gun from her. Hospital records admitted at the trial showed no evidence of a head wound. On this testimony, there is no reason to suppose that the head blows, if they occurred, were more likely than Cronan's leg wound to have impaired his capacity to resist questioning.

thirty-eight minutes[5] and succeeded in obtaining a detailed statement which was admitted against Cronan at his trial.

In challenging the admissibility of this more damaging confession, Cronan relies not only on the leg wound, but also on evidence that Cronan received at least one 100 mg. dose of a pain-suppressant, demerol, at 8:35 A.M., or about two hours before the questioning commenced.

Judges Hogan and Burke found, nevertheless, that Cronan was "alert" and "able to resist the questions if he so desired." These factual findings are adequately supported by testimony both at the trial and at the *Huntley* hearing that Cronan was "alert," "wide awake," even "in good spirits," and seemingly not in great pain. At no time did Cronan request that the questioning cease or that it be temporarily suspended. The transcript of the session discloses answers that are responsive and coherent and not rambling, disconnected or illogical. As on June 6, it is undisputed that the questioning was conducted without oppressiveness or exploitation of Cronan's condition by his interrogators.

For essentially the same considerations that motivate us to sustain the district and state courts' legal and factual conclusions with respect to the June 6 confession, we must also reject Cronan's contention that the June 7 statement was involuntary as a matter of federal law.[6]

## II.

In addition to urging that we summarily set aside his conviction, Cronan asserts that he has a right to a federal hearing on the voluntariness of his confessions because the state proceedings were inadequate in three respects. Cronan contends that:

(1) an incorrect standard was applied by the state court in finding that Cronan's statements were voluntary, Townsend v. Sain, 372 U.S. 293, 314–315, 318, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963);

(2) the "material facts were not adequately developed at the State court hearing," 28 U.S.C. § 2254(d) (3); and

(3) the state and district court findings that Cronan was able to resist questioning on both June 6 and 7 are unsupported by the evidence at the *Huntley* hearing and trial, 28 U.S.C. § 2254(d) (8).

[4] The first contention is wholly without merit and indeed would seem inconsistent with the third claim. As our

---

5. The stenographer's transcript records that the questioning began at 10:22 and ended at 11:00. One witness stated that the questioning may have lasted as long as 75 minutes.

6. See Jackson v. Denno, 378 U.S. 368, 392 n. 20, 84 S.Ct. 1774, 12 L.Ed.2d 908 holding that Jackson's confession was not involuntary as a matter of law on the basis of undisputed evidence that shortly before the interview Jackson had been shot in his liver and one lung, had lost a large quantity of blood, and had received not only 50 mg. of demerol a few minutes before the confession, but also 1/50 grain of scopolamine, identified in Townsend v. Sain, 372 U.S. 293, 298, 321–322, 83 S.Ct. 745 (1963) as a "truth serum." The cases that Cronan primarily relies upon are readily distinguishable. In Gladden v. Unsworth, 396 F.2d 373 (9th Cir. 1968), there was undisputed testimony that, at the time Unsworth confessed, he was "jabbering" and "raving," his speech was slurred, and he was "in a drunken stupor approaching mania." Even on such compelling evidence of incapacity, not present here, the *Gladden* court did not invalidate the confession summarily but remanded the case for a hearing in the state court, holding that the confession could not stand unless the voluntariness of the confession was "vindicated by further inquiry." Similarly, the finding of involuntariness in Pea v. United States, 130 U.S.App.D.C. 66, 397 F.2d 627 (1967), was premised on uncontradicted medical testimony that Pea was "intoxicated and lethargic," did not "care anything," would "answer yes or no to any question that somebody asks," and was "indifferent to protect himself or not to protect himself," a condition caused both by intoxication and the effects of a bullet lodged in Pea's head.

discussion of Judge Hogan's 1968 opinion demonstrates, the state court focused not only on whether Cronan's questioners acted improperly, but also on Cronan's physical and mental state on both days. There is therefore no basis for Cronan's assertion here that Judge Hogan inquired solely into "the absence of physical coercion" and thus unduly limited his inquiry.[7]

 The second ground advanced as requiring a federal hearing rests on the absence in the state court of expert testimony concerning the likely or possible effects of defendant's injury or the doses of demerol on his capacity to resist questioning. But it appears that the witnesses to either of the confessions called by the state to testify were available for cross-examination either at the trial or *Huntley* hearing. Cronna was free on both occasions to call experts but failed to do so. Moreover, expert testimony as to the hypothetical or theoretically possible effects of an injury or the administration of drugs would carry little weight when compared with the direct testimony based on observation of petitioner's actual behavior during the time he gave the two confessions. Under these circumstances, to remand for a hearing would be a futile gesture, needlessly consuming judicial resources.[8]

Finally, as we have indicated in detail above, we disagree with petitioner's contention that the determinative state findings of fact were unsupported by the evidence.

Affirmed.

---

7. By contrast, see Rogers v. Richmond, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961) where the trial court specifically stated that it would view voluntariness in terms of the likely truthfulness of a confession. See Townsend v. Sain, 372 U.S. 293, 314–315, 83 S.Ct. 745, 758, (1963): "[T]he district judge may, in the ordinary case * * * properly assume that the state trier of fact applied the correct standards of federal law * * * in the absence of evidence, such as was present in [Rogers v. Richmond,] that there is reason to suspect that an incorrect standard was in fact applied."

8. See Townsend v. Sain, 372 U.S. 293, 317, 83 S.Ct. 745 (1963), holding that a district court must grant a hearing where "for any reason not attributable to the inexcusable neglect of petitioner * * * evidence *crucial* to the adequate consideration of the constitutional claim was

not developed at the state hearing * * *" (Emphasis added.) In *Townsend*, the "crucial" missing evidence was that the drug administered to Townsend prior to his confession had the effects of a truth serum. It is not alleged that demerol had similar effects. See also United States ex rel. Caster v. Mancusi, 414 F. 2d 743 (2d Cir. 1969) (per curiam); United States ex rel. Jefferson v. Follette, 396 F.2d 862 (2d Cir. 1968). In *Jefferson* we held a federal hearing was required on the basis of petitioner's affidavit that his lawyer had prevented him from calling as a witness at his *Huntley* hearing, a key eye-witness to his allegedly coerced station-house confession. Most or all eye-witnesses were called here, and Cronan does not allege that any eye-witness who might have testified, but did not would have supplied evidence supporting his position.