**UNITED STATES ex rel. Frantz M. DUMAS, Petitioner,**

v.

**Hon. J. W. PATTERSON, Superintendent, Eastern New York Correctional Facility, Respondent.**

No. 74 Civ. 603.

United States District Court, S. D. New York.

Oct. 4, 1974.

Frantz M. Dumas, pro se.

Louis J. Lefkowitz, Atty. Gen. of N. Y., by Lillian Z. Cohen, Asst. Atty. Gen., New York City, for respondent.

ROBERT L. CARTER, District Judge.

## OPINION

*Facts and Proceedings to Date*

Petitioner was tried and convicted in the New York State Supreme Court by a jury, and sentenced on June 20, 1972, to twelve years' imprisonment for manslaughter in the first degree. After trial but before sentencing, petitioner learned that William Powell, a key prosecution witness, had been under indictment for forgery at the time he testified against petitioner, a fact not disclosed when Powell testified. A motion was made for a new trial on the ground that the prosecution withheld vital information from the defense counsel and the jury. The state answered that the trial prosecutor was also unaware of the indictment at the time Powell testified, and that the non-disclosure was, therefore, accidental and did not justify a new trial. The trial judge denied the motion. On appeal, the Appellate Division unanimously affirmed the conviction without opinion, People v. Dumas, 42 A.D.2d 1052, 348 N.Y.S.2d 547 (2d

Dep't 1973), and leave to appeal was denied on December 3, 1973, by the New York Court of Appeals.

The ground on which petitioner seeks the writ of habeas corpus is (1) either that the prosecutor deliberately suppressed Powell's indictment for forgery at the time he testified or, (2) if the suppression was unintended, there was a substantial likelihood that disclosure of Powell's indictment would have raised a reasonable doubt in the minds of the jurors and avoided conviction.

At the trial, Powell, an eyewitness to the crime charged, was examined by both the defense and prosecution as to his criminal record. On direct examination he revealed that he had been convicted of felonious possession of drugs, sentenced to five years' probation, and was wanted on an outstanding warrant for violation of that probation. Although he had twice denied that the Assistant District Attorney had offered to assist him with his warrant difficulties, he did concede that fact before the conclusion of his direct examination. On cross-examination the defense attorney elicited the admission that, in addition to the probation violation, Powell was also liable to answer warrants charging the crimes of forgery and petit larceny; upon further questioning, Powell acknowledged that he had in fact committed both forgery and theft and described the circumstances surrounding those acts. He also admitted having sold drugs in the past; at one point the defense attorney read a portion of the testimony in the drug case, in which Powell acknowledged passing, and presumably selling, heroin. On cross-examination, the defense returned again to the issue of Powell's forgery warrant and the promise of help by the prosecutor. On re-direct, Powell refuted the suggestion that his testimony was colored by the possibility of obtaining assistance on the warrant. Powell was again summoned by the defense for further cross-examination. He revealed that the Assistant District Attorney in charge of the Hom-icide Bureau had told him that the prosecutor would try to help him and that it was Powell's belief that he would be "helped out" not only on the drug warrant, but on the forgery and petit larceny charges as well. He finally stated that he anticipated help in those two matters in return for being a witness in petitioner's trial.

Powell's arrest for forgery and petit larceny was discussed by both the defense and the prosecution in their summations. The defense attorney noted Powell's motivation to lie, arguing that he "has two criminal charges hanging . . . over his head even to now," again repeating that he was wanted for forgery and larceny, and stating that Powell was testifying in exchange for a promise of leniency in respect of the outstanding warrants. The prosecution conceded that it had offered to aid Powell on the forgery and probation violation warrants in return for his cooperation in petitioner's trial.

### Exhaustion of State Remedies

The petitioner has exhausted state remedies within the meaning of 28 U.S. C. § 2254(b). Picard v. Connor, 404 U. S. 270, 276, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

### Disposition of the Petition

■ Petitioner's first contention, that the prosecutor's failure to reveal the existence of the indictment against William Powell was deliberate, must be rejected on one or all of three grounds. First, Justice Mollen in his denial of the motion for a new trial inferentially determined that the non-disclosure was not purposeful. See Townsend v. Sain, 372 U.S. 293, 313–315, 83 S.Ct. 745, 9 L.Ed. 2d 770 (1963). From the record before this court, it appears that Justice Mollen accepted as uncontroverted the representations of the trial Assistant District Attorney and the Assistant District Attorney in charge of the Homicide Bureau, in opposition to the motion for a new trial, that they had no actual knowledge

of the indictment at the time Powell testified.[1] As far as is known, petitioner, faced with these statements, did not produce any evidence to the contrary nor request an evidentiary hearing on the issue of deliberateness. *See* United States ex rel. Cronan v. Mancusi, 444 F.2d 51, 56 (2d Cir.), cert. denied, 404 U.S. 1003, 92 S.Ct. 572, 30 L.Ed.2d 556 (1971); Jefferson v. Follette, 396 F.2d 862, 864–865 (2d Cir. 1968). If Justice Mollen as I read the record did determine that the concealment was not calculated, his determination is not subject to challenge on the present petition where the only evidence submitted points in the direction of inadvertent suppression.

Second, even if Justice Mollen did not address himself to the question of knowing suppression [2], petitioner obviates the need for the resolution of this point by his concession in his papers filed here that the trial prosecutor had no actual knowledge of the indictment.[3]

Third, the circumstances in any event here do not add up to a case of deliberate suppression. Petitioner's position is grounded upon the Supreme Court's statement in Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), that a prosecutor should be held responsible for all relevant information available to him or known to other prosecutors in his office: "[W]hether the nondisclosure was a result of negligence or design, it is the responsibility of the prosecutor." *Id*. at 154, 92 S.Ct. at 766. In this case, a prosecutor in the District Attorney's Office of Kings County took Powell's case to the grand jury after the Criminal Court dismissed the forgery and larceny charges against him. An indictment resulted. The trial prosecutor, also from the Kings County Office, was unaware that an indictment had been sought and obtained on the forgery offense. Petitioner characterizes this lack of personal knowledge of the pending indictment as immaterial to the question of wilful suppression, and argues that failure to reveal the existence of the indictment should be judged under the standard of deliberate suppression.

However, that is not the law. *Giglio* merely estops the prosecution from denying that there has been a suppression simply because the trial assistant did not have personal knowledge of the information in issue. *Giglio* cites with approval United States v. Keogh, 391 F. 2d 138 (2d Cir. 1968). In *Keogh*, the Second Circuit classified claims of suppression by the prosecution into three categories: (1) deliberate suppression, which includes "not merely a considered decision to suppress, taken for the very purpose of obstructing, but also a failure to disclose evidence whose high value to the defense could not have escaped the prosecutor's attention"; (2) suppression of evidence material either to guilt or punishment after a request by the defendant without regard to the "good faith or bad faith of the prosecution"; and (3) non-deliberate suppression outside categories (1) or (2) where hindsight discloses the suppressed evidence could have been put "to not insignificant use" by the defense. *Id*. at 146–147. The standard applied to determine prejudice to the defendant as a result of the suppression varies with the category.

In the first category, due process infringement is clear and a new trial is almost automatic; even where prosecutorial misconduct is evident, however, a new trial will not ordinarily be granted if the suppressed evidence was immaterial and could not "in any reasonable likelihood have led to a different result on retrial." United States v. Mele, 462

---

1. Affidavits of Edward Rappaport and Harold Levy.

2. "The fact of the Indictment if known to the trial District Attorney, I'm not sure whether he knew it or not, but even if known to you and if made known to you would not necessarily have assisted the defendant." Sentencing Minutes at 4.

3. Petitioner's Supplemental Reply at 1.

F.2d 918, 924 (2d Cir. 1972).[4] In the second category, the critical factors are the request and the materiality of the undisclosed evidence; if the request "flagged" the government's attention to the importance of the evidence to the defense and the evidence is found to be material, the suppression again is a violation of due process warranting a new trial. In the third category, the invalidation of a conviction occurs only where there is a high probability that the undisclosed evidence would have raised a reasonable doubt as to the defendant's guilt in the mind of a conscientious juror. See, United States v. Kahn, 472 F. 2d 272, 287 (2d Cir.), cert. denied, 411 U.S. 982, 93 S.Ct. 2270, 36 L.Ed.2d 958 (1973).

Two Second Circuit opinions subsequent to Giglio indicated that non-disclosure in circumstances not dissimilar to the case here had to be judged under the third standard. In United States v. Fried, 486 F.2d 201 (2d Cir. 1973), the trial prosecutor failed to reveal that a key government witness was under indictment. That this witness had been indicted was significant for if that fact had been disclosed, the defense could have used this information to impeach the witness' credibility and would have argued that the witness was testifying for the government in the expectation of leniency in the case pending against him. The Court of Appeals accepted the district court's view that the suppression was inadvertent and not deliberate, even though it found the prosecution negligent in failing to disclose valuable and important information. Being inadvertent, and since no request for the information had been made by the defense, the test to be applied to determine whether a new trial was warranted was whether there was a high probability that the information, if revealed, would have avoided the conviction.

In the more recent case of United States ex rel. Rice v. Vincent, 491 F.2d 1326 (2d Cir. 1974), the trial prosecutor at the retrial of the defendant was unaware that a fingerprint used against the defendant at retrial had been initially designated by the police as of "no value"; the Assistant District Attorney who prosecuted the first trial knew of the designation. The record did not reveal a request by the defendant for the results of the police report, and the court doubted whether the alleged request for prior statements of witnesses would have satisfied the second category of Keogh, supra, in any event. Again, if no request by the defense had been made, the determinative due process yardstick was whether the non-disclosed evidence was of such significant materiality that its disclosure might have influenced the jury's verdict.

The petitioner's first contention, that the suppression was deliberate, must be rejected.

The petitioner's alternative contention is that even if the suppression of the indictment was unintentional, there is a substantial likelihood that disclosure that Powell was under indictment would have raised a reasonable doubt in the minds of the jurors and avoided petitioner's conviction. This, normally, is a heavy burden to meet. Petitioner must show that a high probability exists that an acquittal would have resulted had this information been uncovered:

> "While we do not dispute that relief may sometimes be granted even in such cases, the standard of materiality must be considerably higher . . . . Failure to appreciate the use to which the defense could place evidence in the prosecutor's hands, or forget-

---

4. As will be seen in the consideration of petitioner's second contention, it is highly unlikely that the revelation of the indictment would have had any impact on the jury's verdict. This determination also disposes of the need to consider petitioner's subsidiary claim, that the defense attorney's questioning of Powell should have served as a "request" for evidence under an analogy to Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and judged by a similar standard as in deliberate suppression. See, United States v. Tramunti, 1974, 500 F.2d 1334 (2d Cir. 1974).

fulness that it exists when a development in the trial has given it a new importance, are quite different. Since this must happen to the most scrupulous prosecutors . . . the problems of the courts and the wider interests of society unite to require a substantially higher probability that disclosure of the evidence to the defense would have altered the result. To invalidate convictions in such cases because a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict would create unbearable burdens and uncertainties." United States v. Keogh, 391 F.2d at 147–148.

Justice Mollen, in denying petitioner's motion for a new trial, accurately conveyed the minimal effect which disclosure of the indictment would have had on the jury and on petitioner's defense:

"Mr. Brackley, if in fact you had not been aware of the fact that the witness had been arrested and charged with those various crimes and had not had the opportunity to delve into that arrest and facts underlying the arrest extensively in the course of your cross examination, then clearly I would find a great deal of merit in the motion, and in all likelihood would be disposed toward granting it, but the essential fact as I consider it was not so much the fact of the Indictment itself, the important fact was that the defense was aware of the fact that the witness, Powell had been arrested and charged with those crimes and the Court permitted you to go into those matters extensively when you did and the whole issue as to whether or not that witness had been promised any special treatment by the District Attorney's office in the form of leniency over disposition of the charges was gone into rather extensively at the time of trial, was brought into your cross examination on those issues.

"As a matter of fact, I wondered, although it is all speculation, whether or not the fact that the witness had been indicted if known to you would have been helpful at all because it merely would have indicated to the jury that the District Attorney was in fact proceeding as against the witness. You had the opportunity to and you did bring out the fact that the witness had been arrested and faced the various charges. The fact of the Indictment . . . would not necessarily have assisted the defendant.

. . .

"Now, I repeat if you had not known of the arrest of the witness then clearly, I think the law would require and fairness would require that the motion for a new trial should be granted since that might have been an important factor in evaluating the credibility of the witness, but the jury was aware of the fact that the witness, Powell had been arrested, was being held at the time on these charges and the jury, therefore, had the opportunity to evaluate as to whether or not there might be a quid pro quo for his testimony in the Dumas case, and under the circumstances, the Court cannot see how the defendant was prejudiced in that respect and therefore, I am inclined towards denying the motion . . . ." [5]

■ While the fact of Powell's indictment was not before the jury, the jury was well aware of his arrest for forgery and petit larceny; indeed, the defense raised it four times during various cross-examinations and again in the summation. It is also extremely significant that Powell acknowledged in open court that he was guilty of these charges. It is hard to see how the disclosure of a formal accusation for these crimes could have had any greater effect on the jury's determination of Powell's credibility.

5. Sentencing Minutes at 3–5.

Petitioner further asserts that "[a]lthough Powell was extensively cross-examined on matters that reflected on his credibility . . . [t]hese matters, while hardly to Powell's credit, do not provide a motive for testifying falsely against petitioner."[6] Presumably, the knowledge that a formal felony indictment was pending would have enabled the defense to present more effectively to the jury the full extent of the advantages Powell might hope to gain by cooperating and testifying falsely against the petitioner. Because of the suppression, it was argued that the defense could not effectively present a motive for Powell to lie.[7]

There are two responses to this assertion. First, petitioner has stated that it is "the pendency of criminal actions that often provides a motive for testifying falsely."[8] Assuming that is true, then it is not unlikely that the absence of any formal indictment against Powell, which was the case for all that the jury knew, could have led the jury to infer that a deal *had* been made with the prosecution, thereby casting doubt on Powell's credibility. Second, it is claimed that Powell did know of the pending indictment, "that he was still in trouble for the forgery case." Petitioner has asserted that this was clearly shown in exchanges between Powell and the defense attorney during cross-examination, and indicated that he "was hoping for or relying on some consideration from the prosecutor's office on these charges, in return for his testimony."[9] All this argument proves is that a motive to lie was clearly present at the time Powell testified and that the jury could have gleaned the existence of such a motive from these exchanges between Powell and defense counsel.

A review of the trial transcript, the sentencing minutes and petitioner's argument leaves no doubt that the disclosure of Powell's indictment would not bring petitioner's case within the rule of United States v. Fried, 486 F.2d 201, 203 (2d Cir. 1973), "that a new trial may be ordered only upon a showing that there is a significant chance that the non-disclosed item, developed by skillful counsel, could have induced a reasonable doubt in the minds of enough jurors to avoid a conviction." *See also,* United States v. Mayersohn, 452 F.2d 521, 526 (2d Cir. 1971).

The court therefore concludes that the failure to disclose Powell's indictment did not under the circumstances of this case deny petitioner due process and accordingly the writ must be denied.

So ordered.

---

6. Petitioner's Reply at 15.

7. *Id.* at 13, 15–16.

8. Id. at 13.

9. Petitioner's Supplemental Reply at 5–6.