514 F.2d 45
 UNITED STATES of America ex rel. William STANBRIDGE,
Petitioner-Appellee-Appellant,
v.
John R. ZELKER, Superintendent of Green Haven Correctional
Facility, RussellOswald, Commissioner of
Corrections, Respondents-Appellants-Appellees.
 Nos. 709, 710, Dockets 73-2504, 75-2009.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 21, 1975.
Decided April 15, 1975.
 
 William Epstein, New York City (William J. Gallagher, The Legal Aid Society, Federal Defender Services Unit, New York City, on the brief), for petitioner-appellee-appellant.
 Ralph L. McMurry, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen., on the brief, Samuel A. Hirshowitz, First Asst. Atty. Gen., of counsel), for respondents-appellants-appellees.
 Before ANDERSON, MULLIGAN and VAN GRAAFEILAND, Circuit Judges.
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 This is an appeal from an order of the United States District Court for the Eastern District of New York granting in part and denying in part petitioner's application for a writ of habeas corpus. We have concluded that the district judge erred in his partial grant of the writ. Accordingly, we reverse that portion of his order while affirming his decision in all other respects.
 
 
 2
 On March 22, 1961, as petitioner William Stanbridge and two other youths, Robert Moll and John Closter, were cruising about Manhasset, New York in petitioner's "hotrod"[1], they decided to rob a Food Fair Supermarket. Leaving the auto on a side street adjacent to the shopping center in which the supermarket was located, petitioner and his companions donned masks and entered the rear of the store. Petitioner carried a toy gun taken from the trunk of his car, and Moll brought along a sawed-off shotgun.[2] While Stanbridge contends that he was unaware of the presence of the shotgun, it is undisputed that such weapon was in Moll's possession during the entire course of events here described.
 
 
 3
 The facts surrounding the robbery itself are not at issue. Suffice it to say that the petitioner and his partners threatened and tied up several of the Food Fair employees and departed, carrying paper bags filled with money.
 
 
 4
 As they were leaving the supermarket, Moll, Closter and petitioner were surprised by Patrolman Joseph Coote of the Nassau County Police Department, who, gun in hand, ordered the three to halt. Petitioner and Closter dropped their bags of money in surrender. Moll, however, fired his shotgun, killing Officer Coote. The three then fled.
 
 
 5
 Within a matter of hours, a team of Nassau County detectives began searching for the three young men, following the lead provided by several witnesses who had described the unusual auto. This search led initially to the home of a teenage boy who owned a somewhat similar vehicle. He advised the detectives that petitioner had a car fitting their description and accompanied them to the Stanbridge home.
 
 
 6
 Petitioner was taken into custody about 11:30 P.M. and placed in the detectives' automobile. In response to their inquiries, petitioner directed the detectives to a private garage several blocks away where his green hotrod was parked. The car was searched, and bloodstains were found on the rear seat.[3] Subsequent thereto, petitioner and his automobile were taken to the Roslyn, New York police station.
 
 
 7
 Petitioner, an eighteen year old youth, was interrogated by detectives for about seven and a half hours following his arrival at police headquarters (12:30 A.M. until 8:00 A.M.). He contends that during this interval he was deprived of sleep, food and advice of counsel.[4] There is, however, no evidence that petitioner requested any of the three. Indeed, he at no time indicated a desire that the interrogation stop.
 
 
 8
 Sometime after 8:00 A.M. petitioner confessed to his participation in the robbery. Moll and Closter, apprehended soon after Stanbridge, also confessed.
 
 
 9
 Following indictment of the three on charges of felony and common-law murder, as well as robbery, grand larceny and assault, a trial was held in Supreme Court, Nassau County, before Justice Frank A. Gulotta.[5] All three confessions were introduced into evidence although none of the defendants testified. On January 6, 1962, a verdict of guilty was returned against petitioner on charges of first degree manslaughter,[6] first degree grand larceny, two counts of first degree assault and two counts of second degree assault.
 
 
 10
 On appeal to the Appellate Division, the case was remanded for a hearing, pursuant to Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), on the voluntariness of the confessions.[7] On remand, a Huntley hearing was conducted, and all confessions were found to be voluntary. The case returned to the Appellate Division, which then affirmed.[8] The New York Court of Appeals likewise affirmed.[9]
 
 
 11
 The United States Supreme Court vacated the judgment and remanded for further consideration in light of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1969).[10] Upon reconsideration, the New York Court of Appeals again affirmed,[11] and the Supreme Court denied certiorari.[12]
 
 
 12
 Petitioner next sought habeas corpus relief in the United States District Court for the Eastern District of New York before the Hon. Jacob Mishler, Chief Judge.
 
 
 13
 The petition submitted by Stanbridge to Judge Mishler raised four issues:
 
 
 14
 1. Was petitioner's right of confrontation violated by the introduction into evidence of the confession of Moll, a non-testifying co-defendant?
 
 
 15
 2. Was petitioner's own confession involuntary, and therefore inadmissible?
 
 
 16
 3. Was the introduction into evidence of photographs of petitioner's automobile improper in light of the warrantless search and seizure of the vehicle?
 
 
 17
 4. Was the arrest of petitioner without probable cause, thereby rendering inadmissible the confession as the fruit of an illegal arrest?
 
 
 18
 Judge Mishler saw no merit in petitioner's final three assertions. With this conclusion we agree. On the confrontation issue the trial judge decided that the granting of a writ of habeas corpus was mandated.[13] We disagree.
 
 
 19
 In Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court held that the defendant's inability to cross-examine a non-testifying codefendant about his implicating confession violated defendant's Sixth Amendment right of confrontation. The scope of the Bruton decision has been considered by our court on a number of occasions, and we have concluded that error of constitutional dimensions does not inevitably occur if the questioned confession is admitted under proper instructions from the court concerning its limited use and purpose.[14] The likelihood of error must be measured against the prejudicial consequences of the failure of the jury to follow the court's instructions, i. e., the "devastating" effect of the incriminations contained in the codefendant's admissions. (See Bruton, at 136, 88 S.Ct. 1620, 20 L.Ed.2d 476). Where the confession adds nothing to what is otherwise clearly and properly in the case, it can have little "devastating" effect.
 
 
 20
 This situation would clearly obtain were the defendants to voluntarily sign identical confessions. However, since confessions are rarely maternal twins, the court must look to their substance to see whether they interlock sufficiently on vital points to indicate a common genesis. If they do, "devastating" effects do not follow from their admission.
 
 
 21
 This "interlocking confession" doctrine does not require absolute identity of statements. United States ex rel. Ortiz v. Fritz, 476 F.2d 37 (2d Cir. 1973). It is sufficient if the two confessions are substantially the same and consistent on the major elements of the crime involved. United States ex rel. Duff v. Zelker, 452 F.2d 1009 (2d Cir. 1971), cert. denied, 406 U.S. 932, 92 S.Ct. 1807, 32 L.Ed.2d 134 (1972). In Duff, the petitioner confessed to riding with his codefendants to the scene of the crime. However, he contended that he, thereafter, walked away from the liquor store where the crime was to take place. His codefendant, on the other hand, stated in his confession that Duff "walked toward the liquor store". This Court did not find such a difference to be significant where the confessions were to "essentially" the same facts:
 
 
 22
 "The statements (of codefendant) were similar to Duff's own confessions . . . which placed him at the scene with a fair implication of knowing participation. When the defendant's 'confession interlocks with and supports the confession of' the co-defendant, there is no violation of the Bruton rule." 452 F.2d at 1010.
 
 
 23
 In the case of United States ex rel. Ortiz v. Fritz, supra, the confessions at issue not only covered different aspects of the crime, but were directly contradictory as to the time of its commission. Judge Oakes, writing for the Court, said:
 
 
 24
 "Although the three confessions do not all cover the same facts, they do interlock and are consistent as regard the slaying. As to the time of commission, there is a considerable discrepancy. . . . This means that one or more of the confessions is false or erroneous. But we do not think it takes away from the 'interlocking' aspect of the confessions. As to motive, plot and execution of the crime they are essentially the same." 476 F.2d at 39.
 
 
 25
 The court below, while acknowledging the existence of the "interlocking confession" doctrine, felt that there were enough "significant differences" between the homicide confessions of Moll and Stanbridge to make Moll's inadmissible in the joint trial for that crime. These differences he found to be as follows:
 
 
 26
 1. Moll stated that petitioner had a gun. Petitioner maintained that he carried no "dangerous weapon".[15]
 
 
 27
 2. Moll stated that before entering the supermarket he stopped and loaded his shotgun. Petitioner contended that prior to the shooting he was unaware that either of his companions was armed.[16]
 
 
 28
 3. Moll stated that he had consulted with his companions before firing. Petitioner stated that the shooting took him by surprise.[17]
 
 
 29
 While we have some doubt as to whether these three recitals are indeed different, we find no need to resolve this issue in view of our conclusion that the differences, if any, are insignificant and irrelevant to any of the elements of the crime of manslaughter of which petitioner was convicted. See United States ex rel. Ortiz v. Fritz, supra. There was nothing in Moll's confession that implicated petitioner any more in the commission of this crime than did his own confession. Ortiz, supra, 476 F.2d at 40-41.
 
 
 30
 Judge Mishler held that, under the then applicable New York law, a necessary element of the crime of first degree manslaughter was knowledge by the non-slaying accomplice that the slayer possessed, or intended to use, a dangerous weapon.[18] Concluding that the only proof of petitioner's knowledge was contained in the statements of Moll,[19] he, therefore, held the introduction of the latter's confession to be violative of Bruton.
 
 
 31
 The difficulty with the district court's conclusion that Stanbridge could not have been convicted without proof that he knew of Moll's shotgun is that it ignores the trial court's instructions to the jury. Rather than requiring the jury to find such knowledge as a prerequisite for conviction, the trial judge charged on a standard conspiracy theory. Under his instructions, it was sufficient for petitioner's conviction that a conspiracy existed which included the means and methods of escape and that the shooting took place pursuant to, and in furtherance of, that conspiracy.[20] No objection was made to this portion of the charge by trial counsel, and no request was made that knowledge of the dangerous weapon be charged as a requisite element for Stanbridge's conviction.
 
 
 32
 We believe that the trial court's instructions were fully in accord with New York law.[21] In any event, there is nothing of constitutional magnitude here. A jury charge in a state trial is normally a matter of state law. Absent a showing that alleged errors were such as to deprive defendant of a federal constitutional right, the charge is not reviewable on federal habeas corpus. Cupp v. Naughten, 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973).
 
 
 33
 Petitioner's statements, standing alone, were sufficient to sustain his conviction under the conspiracy theory. The additions, and/or contradictions contained in Moll's statements were of no significance. Since the "dangerous weapon" involved in the homicide was the shotgun and not petitioner's pistol, it is of no concern whether the pistol was real or plastic. Since knowledge of the shotgun's existence was not a requisite element for petitioner's conviction, it is of little import whether Moll loaded it in the presence of his companions or whether he called for advice before squeezing the trigger. Petitioner, it must be remembered, was convicted of manslaughter, not murder. We have concluded, for the reasons above, that the two confessions do, in fact, interlock, and Bruton is, therefore, inapplicable. Accordingly, we reverse the partial grant of habeas corpus by the court below.
 
 
 34
 Petitioner's three additional claims of constitutional infringement were rejected by the district court, and we affirm the disposition of each of the three.
 
 
 35
 The first of these is petitioner's contention that, under the totality of the circumstances, his confession was involuntary. The facts surrounding petitioner's interrogation are set out at the onset of our opinion.
 
 
 36
 Title 28, U.S.C. Section 2254(d) provides, with eight exceptions not applicable here,[22] that a factual determination by a state court after a hearing on the merits must be presumed to be correct in a federal habeas corpus proceeding. Petitioner makes no attempt to rebut this presumption. Instead, he merely seeks a re-examination of the facts already probed in detail by the state court. Section 2254 places the burden on the petitioner to establish by convincing evidence that the factual determinations in the Huntley hearing were erroneous. United States ex rel. Cronan v. Mancusi, 444 F.2d 51 (2d Cir. 1971); United States ex rel. Coleman v. Mancusi, 423 F.2d 985 (2d Cir. 1970); United States ex rel. Allen v. LaVallee, 411 F.2d 241 (2d Cir. 1969). The petitioner has failed to carry this burden.
 
 
 37
 Although a federal judge may defer to the state court's findings of fact where, as here, those facts are supported by ample evidence, it is his duty to apply the applicable federal law to the state court's fact finding independently. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); United States ex rel. Holes v. Mancusi, 423 F.2d 1137 (2d Cir. 1970). Independent application of federal law to the facts found in the state proceeding herein supports the determination that the confession was voluntary.[23] Seven or eight hours under the conditions described here do not constitute "prolonged" interrogation as that phrase has been used by the courts (See United States ex rel. Coleman v. Mancusi, supra.)[24] The record indicates no request by petitioner either that the interrogation cease or that he be provided with food or drink (See Coleman, supra.) There is no contention that petitioner was an individual of low intelligence (See Clewis v. Texas, 386 U.S. 707, 712, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967); Spano v. New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959)) or that false promises or trickery were used to induce his confession (See Spano, supra ; United States ex rel. Everett v. Murphy, 329 F.2d 68 (2d Cir. 1964), cert. denied, 377 U.S. 967, 84 S.Ct. 1648, 12 L.Ed.2d 737 (1964)). On the basis of the facts found at the Huntley hearing, "we neither find the interrogators' conduct so coercive or the petitioner so isolated from usual societal reinforcements as to render his statements the product of a will overborne". United States ex rel. Coleman v. Mancusi, supra, 423 F.2d at 987.[25]
 
 
 38
 Petitioner's next contention is that his car was searched and seized in violation of his Fourth (and Fourteenth) Amendment rights and it was, therefore, error to admit into evidence photographs of the car and of its bloodstained rear seat.
 
 
 39
 In terms of the circumstances justifying a warrantless search, the Supreme Court has long distinguished between an automobile and a home or office. Chambers v. Maroney, 399 U.S. 42, 48, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). One has a lesser expectation of privacy in a motor vehicle. "It travels public thoroughfares where both its occupants and its contents are in plain view." Cardwell v. Lewis, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974).
 
 
 40
 We think that the recent Supreme Court decision in Cardwell v. Lewis, supra, is dispositive as to the photographs of the auto's exterior. "Under circumstances such as these, where probable cause exists, a warrantless examination of the exterior of a car is not unreasonable under the Fourth and Fourteenth Amendments." Cardwell, supra at 592, 94 S.Ct. at 2470.
 
 
 41
 While photographs of the rear seat involved a form of intrusion into the interior, they pictured only portions of the car which were in full view from outside the vehicle. In any event, the abundance of evidence against petitioner certainly relegates the admission of the rear seat photographs to the category of harmless error. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).
 
 
 42
 Petitioner's final contention that the police lacked probable cause to detain or arrest him borders on the frivolous. The unique automobile which he drove to and from the scene of the crime identified him like a trade mark.
 
 CONCLUSION:
 
 43
 In so far as the district judge partially granted petitioner's application for a writ of habeas corpus, we reverse. In all other respects we affirm.
 
 
 
 [1]
 Petitioner's automobile may have been one of the most easily identifiable vehicles ever utilized in a criminal venture. It was a 1955 green Chevrolet with a raked body (the back end higher than the front), Buick tail lights, a Cadillac grill, a louvered hood and spotlights in place of rear view mirrors on each side of the car. The "For Sale" signs in each of the auto's back windows provided further recognizable and unique characteristics. (See trial transcript, pp. 455-57)
 
 
 [2]
 There is some evidence that the third youth, Closter, carried a revolver
 
 
 [3]
 The blood was that of Robert Moll, who admitted that he had injured his hand in the process of firing the shotgun
 
 
 [4]
 Although Stanbridge also contended that physical violence was used by the interrogating officers, this allegation was rejected by the state court judge who conducted the Huntley hearing
 
 
 [5]
 In addition to reading to the jury the several counts of the indictment, the trial judge charged that, if the facts so warranted, defendants could be convicted of any lesser included offenses. (Trial transcript p. 1612)
 
 
 [6]
 While Closter was also convicted of first degree manslaughter, Moll, the actual gunman, was found guilty of murder
 
 
 [7]
 People v. Moll, 22 A.D.2d 921, 255 N.Y.S.2d 735 (2d Dept. 1964)
 
 
 [8]
 People v. Moll, 26 A.D.2d 654, 272 N.Y.S.2d 611 (2d Dept. 1966)
 
 
 [9]
 People v. Moll, 21 N.Y.2d 706, 287 N.Y.S.2d 675, 234 N.E.2d 698 (1967)
 
 
 [10]
 Stanbridge v. New York, 395 U.S. 709, 88 S.Ct. 2033, 23 L.Ed.2d 655 (1969)
 
 
 [11]
 People v. Stanbridge, 26 N.Y.2d 1, 307 N.Y.S.2d 876, 256 N.E.2d 185 (1970)
 
 
 [12]
 Stanbridge v. New York, 398 U.S. 911, 90 S.Ct. 1707, 26 L.Ed.2d 71 (1970)
 
 
 [13]
 The writ was granted only as to Stanbridge's manslaughter conviction. On the remaining charges on which petitioner had been convicted, Judge Mishler found no constitutional infirmity
 
 
 [14]
 See, e. g., United States ex rel. Smith v. Montanye, 505 F.2d 1355 (2d Cir. 1974); United States v. DeBerry, 487 F.2d 448 (2d Cir. 1973); United States ex rel. Ortiz v. Fritz, 476 F.2d 37 (2d Cir. 1973); United States ex rel. Duff v. Zelker, 452 F.2d 1009 (2d Cir. 1971), cert. denied, 406 U.S. 932, 92 S.Ct. 1807, 32 L.Ed.2d 134 (1972); United States ex rel. Nelson v. Follette, 430 F.2d 1055 (2d Cir. 1970), cert. denied sub nom. Nelson v. Zelker, 401 U.S. 917, 91 S.Ct. 899, 27 L.Ed.2d 818 (1971); United States ex rel. Sloan v. McMann, 415 F.2d 275 (2d Cir. 1969); United States ex rel. Dukes v. Wallack, 414 F.2d 246 (2d Cir. 1969); United States ex rel. Catanzaro v. Mancusi, 404 F.2d 296 (2d Cir. 1968), cert. denied, 397 U.S. 942, 90 S.Ct. 956, 25 L.Ed.2d 123 (1970)
 
 
 [15]
 Stanbridge maintained that he carried only a plastic gun. (Transcript at 1725). Moll never stated what material he thought petitioner's gun was made of
 
 
 [16]
 Although there was no express statement in Moll's confession to that effect, the judge below concluded that his words implied that the shotgun was loaded in the presence of, and, therefore, in full view of petitioner. There is no basis for such an inference. Moll at no time contradicted petitioner's claim that he didn't see the shotgun until the shooting
 
 
 [17]
 According to the testimony of a friend, Ildo Ruiz, Moll had confided in him shortly after the shooting. At that time, Moll allegedly told Ruiz that when the police officer ordered them to halt, "he turned around and he asked one of the other guys if he should, and somebody said 'yeah', one of the other guys . . . and he turned around and shot the officer". (Transcript at 823-824). There was, however, no testimony on Moll's part that it was Stanbridge who provided the answer. Thus, there is nothing irreconcilable between the two confessions on this point
 
 
 [18]
 Section 1050 of the former New York Penal Law, in effect at all times relevant herein, defined first degree manslaughter as follows: "Such homicide is manslaughter in the first degree, when committed without a design to effect death: . . . (2) In the heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon."
 
 
 [19]
 In arriving at this conclusion, the district judge evidently failed to note petitioner's admission that his companions "could have had a stick or a club or something . . . they wouldn't ask me to go out unless they might have had something". (Transcript at 1736-37)
 
 
 [20]
 Justice Gulotta's charge to the jury. (Transcript at 1621)
 
 
 [21]
 Ruloff v. The People, 45 N.Y. 213, 217 (1871): "If there was a general resolution against all opposers, and to resist to the utmost all attempts to detain or hold in custody any of the parties, all of the persons present when the homicide was committed were equally guilty with him who fired the fatal shot."
 
 
 [22]
 A Huntley hearing was conducted by the state court, at which time the material facts were fully developed, and after which detailed findings of fact and conclusions of law were made. This is clearly not a situation within the eight exceptions of 2254(d), particularly where petitioner makes no claim that the state hearing was less than full and fair. United States ex rel. Lathan v. Deegan, 450 F.2d 181, 183 fn 5 (2d Cir. 1971)
 
 
 [23]
 We have given no consideration to petitioner's claim of physical abuse. "(A)rguments . . . which are premised on 'facts' found at the Huntley to be untrue, need not concern us." Lathan, supra, 450 F.2d at 186
 
 
 [24]
 Coleman involved interrogation lasting over six hours. Like the instant case, the questioning there took place in the early morning hours
 
 
 [25]
 We have, of course, recognized the relevance of the absence of Miranda warnings, in a pre-Miranda case, to the issue of voluntariness. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); United States ex rel. Cronan v. Mancusi, supra