**UNITED STATES of America ex rel. Matthew WALKER, Petitioner-Appellant,**

v.

**Hon. Harold W. FOLLETTE, Warden of Green Haven Correctional Facility, Respondent-Appellee.**

No. 461, Docket 35099.

United States Court of Appeals, Second Circuit.

Argued Feb. 11, 1971.

Decided May 25, 1971.

Harvey Kurzweil, New York City, for petitioner-appellant.

Hillel Hoffman, Asst. Atty. Gen., State of N. Y. (Louis J. Lefkowitz, Atty. Gen., and Samuel A. Hirshowitz, First Asst. Atty. Gen., on the brief), for respondent-appellee.

Before FRIENDLY, Chief Judge, WATERMAN, Circuit Judge and McLEAN, District Judge.*

McLEAN, District Judge.

Petitioner is a state prisoner who is serving a sentence of 15 to 35 years imposed upon him by the County Court of Suffolk County, New York, upon his conviction in 1963 of the crimes of rape, attempted robbery, grand larceny and possession and use of a dangerous weapon. In November 1969 he filed a petition for a writ of habeas corpus in the District Court for the Southern District of New York claiming that his right to a fair trial guaranteed him by the Fourteenth Amendment was violated when he was cross-examined about his convictions in two prior cases in which he allegedly was not represented by counsel.

---

* Of the District Court for the Southern District of New York, sitting by designation.

Before this cross-examination was permitted, petitioner, testifying in his own defense, had stated on direct examination that he had never been convicted of a crime.

Judge Mansfield considered it unnecessary to determine the question of fact as to whether petitioner had been represented by counsel in the prior cases. He assumed this fact in petitioner's favor and went on to hold, without a hearing, that under the circumstances, petitioner's constitutional rights had not been violated. On February 27, 1970, he denied the petition with an opinion reported in 311 F.Supp. 490. We agree with this conclusion and accordingly affirm the order.

The proceedings in petitioner's case which have transpired up to this point may be briefly summarized. Petitioner was indicted in late 1962. He was convicted by a jury verdict in the County Court on February 19, 1963, and sentenced on March 29, 1963. The Appellate Division held his appeal in abeyance pending a hearing in the County Court on the voluntariness of petitioner's confession, a hearing made necessary by Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), which had been decided after petitioner's conviction. People v. Walker, 22 A.D.2d 927, 255 N.Y.S.2d 507 (2d Dept.1964). At the hearing the County Court decided that the confession was voluntary. The Appellate Division thereupon affirmed the conviction. People v. Walker, 24 A. D.2d 1079, 265 N.Y.S.2d 609 (2d Dept. 1965). Leave to appeal was denied by the New York Court of Appeals, and certiorari was also denied. Walker v. New York, 385 U.S. 864, 87 S.Ct. 121, 17 L.Ed.2d 91 (1966).

Thereafter petitioner raised his present claim by a petition for a writ of error coram nobis in the state court. This petition was denied, the denial was affirmed by the Appellate Division, People v. Walker, 32 A.D.2d 813, 302 N.Y. S.2d 510 (2d Dept. 1969), and leave to appeal was denied by the New York Court of Appeals. It is thus clear that petitioner has exhausted his state remedies. After the District Court had denied the petition for a writ of habeas corpus, this court granted a certificate of probable cause and appointed counsel to represent petitioner on this appeal.

The crimes of which petitioner was convicted were lurid. The prosecution's chief witness was a woman who testified that on October 4, 1962, while she was driving home alone at night on Long Island, she stopped for a red light in the town of Islip. She testified that petitioner, a man whom she had never seen before, forced himself into the car, threatened her with a knife, struck her and demanded her money. Not content with that, petitioner, according to the witness' testimony, took over the wheel of the car and drove the car away with the witness in it. He struck her again several times and eventually raped her.

Petitioner's testimony at the trial was at direct variance to that of the prosecution's witness. He denied the threats and the assault and, among other things, testified that he and the witness were well acquainted, that they had had sexual relations several times before October 4, 1962, and that their relations on that night were entirely voluntary.

It is thus apparent that credibility was a highly important issue. Apparently in an effort to bolster his, petitioner testified on direct examination that he had never been convicted of a crime. On cross-examination he was asked about a conviction in Pennsylvania in 1956. After some temporizing, he admitted the conviction, which he said was "nothing serious." It involved a firearm in some manner which was never satisfactorily explained. It is described in petitioner's brief as a "firearms violation." The prosecutor went on to inquire about another conviction in New Jersey in 1958. Petitioner admitted that he had been convicted of disorderly conduct and fined $250.

The records of these convictions were not offered in evidence, but the prosecutor referred to them briefly in his summation. As far as the record discloses,

no contention was made by petitioner at the trial that he had not been represented by counsel in these earlier encounters with the law. This is not surprising, for Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), upon which this claim is based, was not decided until March 18, 1963, after petitioner had been convicted.[1]

In Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954), a defendant, on trial for the sale of narcotics, testified on direct examination that he had never possessed narcotics. The government was then permitted to prove that on a previous occasion defendant had possessed heroin. That particular heroin had been obtained by government agents by means of an illegal search. In affirming defendant's conviction, the Supreme Court held that, although the unlawfully obtained evidence would not have been admissible on the government's direct case, it could be used to impeach defendant's credibility when defendant, on direct examination, had denied that he had ever possessed it. The Court said (347 U.S. at 65, 74 S.Ct. at 356):

> "It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths."

Some years later, the Supreme Court decided Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967). This is the decision upon which petitioner places his primary reliance here. The somewhat unusual factual situation in that case involved an indictment under a Texas recidivist statute which, under certain circumstances, permitted allegations of felony convictions prior to the offense for which defendant was currently on trial. The indictment, which alleged such prior convictions, was read to the jury at the beginning of the trial. As it eventually turned out, the prosecution was unsuccessful in its attempt to prove enough prior convictions to bring the recidivist statute into play. The trial judge instructed the jury not to consider them. Nevertheless, the Supreme Court reversed defendant's conviction because one of the prior convictions had been obtained in violation of his right to counsel under *Gideon*. The Court said that such a conviction could not be used "either to support guilt or enhance punishment," and that "[t]he admission of a prior criminal conviction which is constitutionally infirm under the standards of Gideon v. Wainwright is inherently prejudicial. * * *" (389 U.S. at 115, 88 S.Ct. at 262).

It may be noted, as the district court pointed out, that *Burgett* did not involve the use by the prosecution of illegal evidence to rebut a false statement made by defendant on the witness stand. The prior convictions in *Burgett* were alleged in the indictment and were offered as part of the government's direct case, for the purpose of enhancing punishment.

Shortly after *Burgett*, however, this court was called upon to determine the propriety of the government's use of illegal evidence to rebut a false statement by defendant. In United States v. Fox, 403 F.2d 97 (2d Cir. 1968), defendant, indicted for interstate transportation of stolen goods, denied on cross-examination that he had told a story to government agents upon his arrest which was inconsistent with his testimony on the stand. The government was permitted to prove the inconsistent statement on rebuttal. The statement had been obtained by government agents without giving defendant the warnings required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). This

---

1. The rule in Gideon v. Wainwright is retroactive and therefore applies in this case. See, Doughty v. Maxwell, 376 U.S. 202, 84 S.Ct. 702, 11 L.Ed.2d 650 (1964) ; Pickelsimer v. Wainwright, 375 U.S. 2, 84 S.Ct. 80, 11 L.Ed.2d 41 (1963).

court reversed the conviction, holding that the use of the illegally obtained evidence, even to contradict defendant's testimony, violated his constitutional rights.

In *Walder*, defendant's false testimony was given on direct examination. In *Fox*, it was elicited on cross. In *Walder*, the testimony related to a collateral matter. In *Fox*, it arguably related to the crime in question. These distinctions are admittedly fine. Nevertheless, this court, while expressing no view as to the continued viability of *Walder*, was unwilling to extend the doctrine of that case beyond its precise facts.

Since *Fox* was decided, and also since the district court's decision in the present case, the situation has changed. On February 24, 1971, the Supreme Court decided Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). This decision revitalized *Walder* and eradicated the distinction which we drew in *Fox*. Defendant, on trial for selling heroin, on cross-examination denied, in substance, that upon his arrest he had made a statement to the police which tended to implicate him in the crime. The statement had been made without benefit of *Miranda* warnings. The trial judge charged that the statement attributed to defendant could be considered by the jury but only in passing upon defendant's credibility. The Supreme Court affirmed defendant's conviction. It cited and quoted from *Walder* and refused to distinguish it on the ground that *Walder* involved a statement by defendant on direct examination on a collateral matter whereas in *Harris*, defendant's testimony was obtained on cross-examination and pertained to the very crime for which he was being tried. The Court said (401 U.S. at 226, 91 S.Ct. at 646, 28 L.Ed.2d at 5):

> "The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances."

*Harris* controls the disposition of the present case, as does *Walder* also, for the factual pattern here is more akin to that in *Walder* than in *Harris*. It can make no difference that the constitutional infirmity in *Harris* and in *Walder* was a violation of *Miranda* whereas here it was a violation of *Gideon*. The principle is the same in either event. If a defendant testifies, he puts his credibility in issue. If he lies in the course of his testimony, he lays himself open to attack by means of illegal evidence which otherwise the prosecution could not use against him. It follows that the district court correctly decided that petitioner's rights to a fair trial had not been infringed.

We wish to express our gratitude to Harvey Kurzweil, Esq., assigned counsel, for his able briefs and argument on petitioner's behalf.

The order is affirmed.