**UNITED STATES ex rel. James L. WRIGHT, Petitioner-Appellant,**

v.

**J. E. LaVALLEE, Superintendent of Clinton Correctional Facility, Dannemora, New York, Respondent-Appellee.**

**No. 250, Docket 72–1796.**

United States Court of Appeals, Second Circuit.

Argued Oct. 20, 1972.

Decided Nov. 22, 1972.

---

Stephen E. Banner, New York City (Simpson, Thacher & Bartlett, New York City, of counsel), for petitioner-appellant.

Amy Juviler, Asst. Atty. Gen., of N. Y. (Louis J. Lefkowitz, Atty. Gen., of N. Y., Samuel A. Hirshowitz, First Asst. Atty. Gen., of counsel), for respondent-appellee.

Before MANSFIELD, OAKES and TIMBERS, Circuit Judges.

MANSFIELD, Circuit Judge:

Upon this appeal by a state prisoner from the denial, without an evidentiary hearing, of a writ of habeas corpus, petitioner asserts that a statement taken from him after his arrest and during custodial interrogation was improperly used against him at trial in violation of the exclusionary principle of Escobedo v. Illinois, 378 U.S. 478, 490–491, 84 S.Ct. 1758, 1765, 12 L.Ed.2d 977 (1964), which held that after a prisoner has requested and been denied counsel "no statement elicited by the police during the interrogation may be used against him at a criminal trial." [1]

1. Petitioner's trial commenced on April 26, 1966. The guidelines laid down in *Escobedo* apply to trials begun after June 22, 1964, whereas those established in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), apply only to trials begun after June 13, 1966. Johnson v. New Jersey, 384 U.S. 719, 734, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). Hence, the standards of *Escobedo*, but not *Miranda*, could be invoked here. United States ex rel. Coleman v. Mancusi, 423 F.2d 985 (2d Cir.), cert. denied, 400 U.S. 842, 91 S.Ct. 84, 27 L.Ed.2d 77 (1970).

The district court concluded that the state court's determination that petitioner's statement was voluntary [2] satisfied the mandates of Townsend v. Sain, 372 U.S. 293, 312–314, 83 S.Ct. 745, 9 L.Ed. 2d 770 (1963), see 28 U.S.C. § 2254(d). United States ex rel. Allen v. LaVallee, 411 F.2d 241, 244 (2d Cir.), cert. denied, 396 U.S. 971, 90 S.Ct. 458, 24 L.Ed.2d 438 (1969). While conceding that the state court had not expressly found that petitioner had not requested a lawyer before making the statement, the district court reconstructed such a finding from the state court hearing, see United States ex rel. Liss v. Mancusi, 427 F.2d 225, 229 (2d Cir. 1970). Petitioner urges that without an evidentiary hearing the district court's finding could not properly be made since, he contends, the state court judge did not recognize the relevance of his request for counsel to the application of the constitutional principle established in *Escobedo*. He further asserts that he is entitled to the writ without need for a hearing because he testified at his trial that he had requested and been denied counsel and he claims that he was not contradicted by the prosecution, so that his version should be accepted under Haynes v. Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963). [3]

We find it unnecessary to resolve these troublesome questions raised by petitioner for the reason that since his statement was used only upon cross-examination to impeach his testimony offered at trial it was properly used pursuant to the Supreme Court's ruling in Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), even though it might have been inadmissible under *Escobedo* if it had been offered upon the prosecution's case in chief.

Petitioner was indicted on three separate counts of murder in the first degree, one count of assault in the first degree and two counts of assault in the second degree. A jury convicted him of murder in the second degree on each of the first three counts and acquitted him of the assault counts. He was sentenced to three concurrent terms of 20 years to life imprisonment. The judgment of conviction was affirmed on appeal without opinion, 35 A.D.2d 781 (1970), and leave for a further appeal to the New York Court of Appeals was denied on December 11, 1970. A petition for certiorari was also denied thereafter, though Justice Douglas was of the opinion that certiorari should have been granted. Wright v. New York, 404 U.S. 866, 92 S.Ct. 118, 30 L.Ed.2d 110 (1971). The habeas petition now before us followed.

The charges against petitioner arose from a single shooting incident in which three victims were slain and the fourth,

---

2. The New York practice established to comply with Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), provides that the trial judge initially determine, in a separate hearing and on the basis of express factual findings, that a statement sought to be introduced at trial was voluntarily made by the defendant and that only after that judicial determination allowing the statement to be admitted will the jury also pass on the issue of voluntariness, People v. Huntley, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965). It is conceded that this practice was followed in this case.

3. Petitioner's own testimony on this point was conflicting, however. On direct examination, he testified that he asked the district attorney for counsel at the station house. On redirect he testified specifically that he had not asked the district attorney for a lawyer, but had twice requested counsel from the arresting officer, though he did not say where. The officer testified, however, that while in the automobile on the way to the station no mention of an attorney was made. Petitioner makes much of the absence of specific testimony by the arresting officer that a request for counsel at the station house was never made. Because of our disposition of this case, however, it is unnecessary to decide whether, under these circumstances, the state could properly rely on petitioner's self-contradiction to prevent the acceptance of the defendant's hindsight version of what actually occurred. Cf. Haynes v. Washington, *supra*.

Mary Jones ("Mary"), who was the state's chief witness at trial and petitioner's former common-law wife, was wounded. Mary testified that as she and her sister Louise were leaving a bingo hall in Brooklyn, an old friend, Nicholson, happened to be double-parked across the street and offered them a ride home. In the front passenger seat was the owner of the car, a man named Williams, whom they did not know. As Mary followed her sister into the back seat of the car and was about to close the door, petitioner got in, closed the door, and ordered the friend to drive around the corner as "he had something he wanted to settle with these two ladies." When Nicholson told him the car belonged to the other man, and Williams objected to petitioner's orders, petitioner pulled a gun from his pocket and shot both Williams, who was turning around, and Nicholson. Mary further testified that she then jumped on petitioner with her knees and during the struggle her sister Louise screamed, "Jimmy, don't do it" to which he responded "It is too late. It is too late." In the course of the struggle, petitioner opened the door and Mary, pushed out of the car, ran to alert a passing police car. She did not realize that she had herself been shot until she returned to the car, and she did not see Louise shot. Laura Clarke, another prosecution witness who knew petitioner and the Jones sisters, however, was in an apartment across the street at the time of the incident and testified that she heard shots, went to the window, and saw petitioner pull Louise from the car and shoot her.

At trial petitioner took the stand and did not deny that he shot the two men in the front seat, but claimed self-defense. He further claimed that he did not fire the shots which hit the sisters. His trial version of the episode was that Mary and Louise, with both of whom he had lived and had sexual relations in the past, had threatened him on several prior occasions. Louise, whose daughter had already had one child by petitioner and was expecting another, allegedly threatened petitioner a week before the shooting that he would never live to see the unborn baby. On the night of the incident petitioner had gone to the bingo hall at Mary's request to deliver money to her, met both Louise and Mary, and was invited by Mary over to the car "to meet a couple of friends." He got in the car at Louise's request and waited to be introduced to the two men in the front, whom he did not know, but instead Mary told Nicholson that petitioner was "the guy that we was talking about." After some profane remarks directed at petitioner by both men in the front seat, Williams reached over the seat and grabbed him by the shoulders. Petitioner struggled free but Williams came up from under the wheel with a piece of iron which he swung at him, hitting Louise by mistake instead. Petitioner tried to open the door and get out but it was locked. As Williams came at him a second time, he took the gun out of his pocket and shot twice. At that point, Mary jumped on him, Louise held his arm and in the struggle both women were shot, although petitioner denied firing either of those shots. Mary opened the door and ran as did petitioner, leaving Louise in the car.

The question and answer statement given by petitioner during his custodial interrogation on the morning after the shooting was introduced on cross-examination. In it petitioner said nothing about being attacked with a tire iron, being unable to escape from the car, or firing only two shots in self-defense. Instead, he answered the district attorney's questions by saying that he "just kept firing" the gun, that he "just remember[ed] shooting" and did not know who he shot "first, second, third, or anything like that." When asked why he shot the women, he replied, "[b]ecause they were fighting me."

In Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), the Supreme Court held that the credibility of a defendant who testifies at trial may be impeached on cross-examination by an earlier conflicting statement rendered

inadmissible in the prosecution's case in chief by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). No reason appears why the same use would not be allowed of an otherwise reliable statement which would be inadmissible upon the state's case-in-chief under Escobedo v. Illinois, *supra*. See United States ex rel. Padgett v. Russell, 332 F.Supp. 41 (E.D.Pa.1971). We have since *Harris* allowed the use on cross-examination of other evidence, otherwise inadmissible, to impeach a defendant's testimony, United States v. Warren, 453 F.2d 738, 742 (2d Cir.), cert. denied, 406 U.S. 944, 92 S.Ct. 2040, 32 L.Ed.2d 331 (1972) (records); United States ex rel. Walker v. Follette, 443 F.2d 167 (2d Cir. 1971) (prior convictions).

■ Petitioner seeks to distinguish his case from *Harris* on the grounds that his statement, though introduced during the course of his cross-examination, did not directly contradict his trial testimony, was read in its entirety to the jury, was emphasized in the prosecutor's summation, was not the subject of a charge by the trial court limiting its use to impeachment, and was challenged as to its voluntariness. None of these claims is persuasive. The conflict in crucial details between petitioner's trial version of the shooting and that given in his earlier statement was so extensive that the earlier inconsistent description "undoubtedly provided valuable aid to the jury in assessing petitioner's credibility," 401 U.S. at 225, 91 S.Ct. at 645. While the better practice would have been to give an instruction to the jury limiting its use of the statement to evaluation of petitioner's credibility, even though none was requested here, we are

satisfied that under the circumstances of this case, where the shootings were admitted, the jury could only have used the statement to appraise petitioner's trial testimony as to how they happened, a use which *Harris* permits.

■ Finally, despite petitioner's claim, this is not a case where (putting aside failure to comply with *Escobedo*) the voluntariness of the statement is in serious question. Cf. Alesi v. Craven, 440 F.2d 975 (9th Cir.), cert. denied, 404 U.S. 856, 92 S.Ct. 103, 30 L.Ed.2d 97 (1971). The trial judge determined at a hearing held in accordance with People v. Huntley, 15 N.Y.2d at 78, 255 N.Y.S. 2d at 843, 204 N.E.2d at 183 (1965), after taking into consideration the absence of counsel during the interrogation,[4] that the statement was voluntary beyond a reasonable doubt, a standard of voluntariness greater than that required for federal approval, see Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). The jury also was instructed thereafter to reject the statement if they found it involuntary, a charge to which petitioner was not constitutionally entitled. *Id.* at 489, 92 S.Ct. 619. As previously noted, the district court, after an independent review of the *Huntley* hearing, found that petitioner had failed to meet his burden of proving the factual determination of voluntariness to be erroneous. We have made a similar comprehensive review of the hearing and note that, when cross-examined at trial, petitioner admitted that any answers he gave at the time the statement was taken were true, but that he was unsure whether the district attorney had put some answers in or omitted others. Our evaluation of the record supports the conclusion that the

---

4. In Johnson v. New Jersey, 384 U.S. 719, 730, 86 S.Ct. 1772, 1779, 16 L.Ed. 2d 882 (1966), the Supreme Court declined to apply *Escobedo* or *Miranda* retroactively, noting that the safeguards established in those cases not only "guard against the possibility of unreliable statements in every instance of in custody interrogation, [but] they encompass situations in which the danger is not necessarily as great as when the accused is subjected to overt and obvious coercion."

factual determination of voluntariness at the state court hearing was not erroneous. United States ex rel. Allen v. LaVallee, *supra*, 411 F.2d at 244. Thus, Harris v. New York controls this case.

Affirmed.