No. 47,402

THE STATE OF KANSAS, *Appellee,* v. BETTY GIDDINGS, a/k/a BETTY LEDFORD, a/k/a LEONA MARSH, *Appellant.*

(531 P. 2d 445)

Opinion filed January 25, 1975.

*Donald H. Humphreys,* of 'Great Bend, argued the cause and was on the brief for the appellant.

*Dennis J. Keenan,* assistant county attorney, argued the cause, and *Vern Miller,* attorney general, *John M. Russell,* county attorney, and *Robert G. Suelter,* assistant county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: The defendant, Betty Giddings, was convicted of forging and uttering a check in violation of K. S. A. 21-3710 (1) (*a*) and (*b*). She was sentenced to the Director of Penal Institutions for a period of not less than one (1) year nor more than ten (10) years on each count, the sentences to run concurrently. She has appealed.

The evidence shows that about 2:00 p. m., December 1, 1972, Mrs. Giddings went into Dillon's north store in Great Bend. She approached Dorothy Sooby, one of the checkers, and asked if she could cash a check. On receiving an affirmative answer she made out a $20 check in Mrs. Sooby's presence and signed it in the name of Rosie Long. Mrs. Sooby gave her a twenty dollar bill but after some discussion with Mrs. Giddings "about her needing some money for her kid for school," Mrs. Sooby changed the bill into smaller denominations. As Mrs. Giddings left the store, Mrs. Sooby became suspicious when she noticed some numerals near the bottom of the check. She called her supervisor, Mr. Fabin, who looked at the

check and shared her suspicions. Fabin then walked to the store parking lot where he observed Mrs. Giddings backing out of a parking stall, and he took down her license number. He testified he observed Mrs. Giddings turn her head and he believed she saw him standing in the parking lot with a check in his hand.

Mr. Fabin called the bank on which the check was drawn and was advised there was no account in the name of Rosie Long. He then took the check to the bank where it was marked "no account." Mrs. Sooby thereafter took the check to the county attorney's office where she filled out a questionnaire and talked to Jack Atteberry, of the Barton County sheriff's office. He showed her a number of pictures from which she identified Mrs. Giddings as the lady who gave her the check. After the identification was made Atteberry had a complaint and warrant prepared in the county attorney's office and took them to the magistrate, before whom he signed the complaint. A warrant was then issued and placed in his hands.

Mrs. Giddings testified she needed the money to go after her son, Duane, who was attending an auto mechanics' school in Plainville; that he had called her, saying he was homesick and wanted to come home to visit his mother. Her defense was built around the proposition that she had no intent to defraud when she wrote and gave the check to Dillon's; that she told Mrs. Sooby she would be back to pick up the check at 5:30 (which Mrs. Sooby denied); that after she got Duane, who the day before had received his stipend from the school, the two drove back to Great Bend and went to the Dillon store to pick up the check; on learning the check had been turned to the county attorney they went to his office to pay off the check; they then started to the sheriff's office, where the check had finally come to rest, intending to pay it there; that Duane ran on ahead and as she was crossing the court house square she was met by Officer Atteberry who took her into custody and clapped her into jail. The testimony of Mrs. Giddings with respect to her efforts to pay off the check was corroborated by her son, by Dillon employees and by the county attorney's secretary.

Numerous errors are alleged on appeal. Mrs. Giddings first contends her arrest was illegal because no testimony was taken by the magistrate before issuing the warrant. The contention lacks merit for several reasons. The complaint was signed before the magistrate and bears his jurat. The applicable statute K. S. A. 22-2302, provides that a warrant shall issue if the magistrate finds probable cause

either from a complaint, or from affidavits filed with the complaint or from other evidence. In *State v. Woods,* 214 Kan. 739, 741, 522 P. 2d 967, we said that a properly verified complaint is sufficient authority for a finding of probable cause and the issuance of a warrant. See, also, *State v. Addington,* 205 Kan. 640, 644, 472 P. 2d 225.

The defendant suggests the magistrate did not read the complaint, but there is not a shred of evidence to support such a claim. It is presumed that a public officer will have done his duty until the contrary has been established. (*Call v. State,* 195 Kan. 688, 408 P. 2d 668; *Wright v. State,* 199 Kan. 136, 427 P. 2d 611.) That presumption is valid under the circumstances of this case.

Even if the warrant had been improperly issued, the defendant's cause would not be aided. An illegal arrest does not, standing alone, invalidate a subsequent conviction. (*Kinnell v. State,* 205 Kan. 445, 469, P. 2d 348; *State v. Addington,* supra, p. 644; *State v. Larkin,* 209 Kan. 660, 661, 498 P. 2d 37; *State v. Woods,* supra, p. 741.) Moreover, we believe the arrest was lawfully made on the basis of probable cause. K. S. A. 22-2401 (c) provides that a law enforcement officer may arrest a person when he has probable cause to believe he has committed a felony. In our opinion Officer Atteberry had reasonable cause to believe Mrs. Giddings had committed a forgery; he had seen the check, he had been informed as to the license tag on the car, he knew the car was frequently used by defendant, and he knew of Mrs. Sooby's positive identification of the defendant.

Defendant next argues there was unreasonable delay in taking her before the magistrate. She was arrested about 5:30 p. m. Friday and taken before the magistrate early in the afternoon on the following Monday. In answer to defendant's complaint concerning the elapsed time the state calls attention to the following facts: the amount of bond was endorsed on the warrant, Mrs. Giddings was allowed to call her attorney and the court house was closed on Saturday and Sunday.

This court strongly disapproves of unwarranted delay in taking *any* prisoner before a magistrate after he or she has been arrested. However, we have said that delay is not in and of itself a denial of due process unless it has in some way prejudiced the accused's right to a fair trial. (*Cooper v. State,* 196 Kan. 421, 411 P. 2d 652; *Underwood v. State,* 214 Kan. 633, 522 P. 2d 457.) The defendant

has not shown she was prejudiced by the three-day delay which occurred here. She had access to her attorney; the amount of bond required had been set and was endorsed on the warrant; and no incriminating statements are shown to have been procured during the incarceration. In *Cooper* we held a thirteen-day delay between arrest and appearance before a magistrate was not shown to have been prejudicial; in *Underwood* the delay was for six days.

Mrs. Giddings further contends the state failed to make out a *prima facie* case of guilt, in that proof of intent to defraud was lacking. The forgery statute, K. S. A. 21-3710, makes intent to defraud a necessary element of the offenses defined therein. Normally, intent is not susceptible of direct or concrete proof; most often it must be inferred from the surrounding facts and circumstances. K. S. A. 21-3110 (9) defines the term in these words:

"'Intent to defraud' means an intention to deceive another person, and to induce such other person, in reliance upon such deception to assume, create, transfer, alter or terminate a right, obligation or power with reference to property."

The most incriminating circumstances in the case at hand was that Mrs. Giddings used a fictitious name in signing the check. This was a circumstance from which, in our opinion, the jury was entitled to infer a fraudulent intent on her part. The provisions of K. S. A. 21-3702 (1) throw some light on proof of intent:

"(1) In any prosecution under this article, the giving of a false identification or fictitious name, address or place of employment at the time of obtaining control over property shall be deemed prima facie evidence of intent to permanently deprive the owner of said property of the possession, use or benefit thereof."

True, the defendant stated she intended to return and pay the check. She also testified she told Mrs. Sooby she would pick up the check about five that evening, although Mrs. Sooby remembered no such conversation. There was further evidence that Mrs. Giddings did return the same evening, ostensibly to pay the check. However, the impact of that evidence may have been tempered somewhat by Fabin's testimony that defendant looked in his direction as she drove from the parking lot, and the jury may well have inferred a guilty conscience was inspired by the sight of that gentleman standing in the parking area holding the check and noting the tag number. At any rate it was for the jury to determine whether or not an intent to defraud was present when the fictitious check

was passed and we think the evidence sufficient to support its finding in that regard.

The court overruled a motion made by Mrs. Giddings to strike count two of the information which alleged the issuance of the fictitious check, and this is assigned as error. We believe there is merit in this contention because the charge in count two does not allege intent to defraud, an essential element of forgery. Parenthetically we might add that intent to defraud *was* included in count one.

Count two alleged that the defendant did:

"[U]nlawfully, feloniously, and wilfully, issue a written instrument; to wit: a check written on the American State Bank, Great Bend, Kansas, in the amount of $20.00, dated November 25, 1972, knowing it to have been made or altered in such a manner that it purported to have been made by another person; to wit: ROSIE LONG, in violation of Section 21-3710 (*b*) of the Kansas Statutes Annotated."

K. S. A. 21-3710 defines the crime of forgery. In pertinent part it reads:

"(1) Forgery is knowingly *and with intent to defraud:*

"(*a*) Making, altering or endorsing any written instrument in such manner that it purports to have been made, altered or endorsed by another person, either real or fictitious, and if a real person without the authority of such real person; . . .

"(*b*) Issuing or delivering such written instrument knowing it to have been thus made, altered or endorsed . . ." (Emphasis supplied.)

In attempting to support the trial court's ruling the state contends (1) count two is framed substantially in the language of the statute, a method which is generally held to be sufficient in alleging an offense (*State v. Chuning,* 199 Kan. 215, 428 P. 2d 843), and (2) criminal intent is implied by the words "unlawfully, feloniously and wilfully." We think neither argument is sound.

It is clear that intent to defraud has been made a specific component of the offenses denounced in 21-3710 as forgeries and we believe it manifest that no charge can be said to follow the language of that statute which entirely omits the required intent.

Our cases hold, in general, that in charging a criminal offense the essential elements composing it must be set forth. In *State v. Minor,* 197 Kan. 296, 416 P. 2d 724, the state failed to allege an essential ingredient of first degree manslaughter, *i. e.,* that the killing would be murder at common law. We held that a conviction of first degree manslaughter could not be sustained.

Similarly, in *State v. Baker,* 197 Kan. 660, 421 P. 2d 16, the information charged Baker with second degree burglary but omitted an essential element of that offense, namely, "in the nighttime." The conviction obtained in that case was held void for lack of jurisdiction.

Although we have not dealt specifically with the failure to allege a specific intent which is made part of a criminal statute, the general rule is found in 42 C. J. S., Indictments and Informations, § 134, pp. 1025, 1026:

". . . A specific intent which is made part of the offense by the statute creating it must be charged, as where the intent with which an act is done brings it within a statute punishing as a felony that which at common law was but a misdemeanor, or where an act is criminal only if done with a particular intent . . ."

In *State v. Bills,* 118 Ark. 44, 176 S. W. 114, the Arkansas statute made it a crime for a person to receive or buy stolen goods knowing them to be stolen, with intent to deprive the true owner thereof. The indictment failed to allege the property was received with the specified intent, but the state contended that use of the word "feloniously" supplied the omission. In answer to this argument, the Arkansas court stated:

". . . But while the use of the word 'feloniously' does impute an unlawful intent to commit a crime, its use can not supply the omission of the allegations essential to constitute a charge of the commission of the particular offense." (p. 46.)

In *People v. Faber,* 29 C. A. 2d 751, 77 P. 2d 921, the charge was criminal slander. The penal code made intent to injure another a specific component of the offense. The complaint contained no allegation of an intent to injure, and the charge was held insufficient. Speaking on the subject of intent the court said that "wilfully" simply implies willingness to commit unlawful acts and not necessarily any specific intent to violate law or to injure another. The court went on to say:

". . . Where specific intent enters into the definition of the crime . . . mere intentional commission of the act denounced is not enough, and therefore it is not enough to charge that it was 'wilfully' done. . . ." (p. 755.)

In our opinion count two was deficient and should have been dismissed.

Are charges of forging and uttering duplicitous, as the defendant contends? This court gave a negative response to this question as

far back as *State v. Murphy*, 145 Kan. 242, 65 P. 2d 342, where it was said:

". . . By statute in this state, although both forgery of a check and uttering of a check are classified as forgery in the second degree, yet each constitutes a separate and distinct offense. . . ." (p. 243.)

*Murphy* was followed in the recent case of *State v. White*, 207 Kan. 800, 486 P. 2d 1381, wherein we stated:

". . . The crimes of forgery and attempting to utter a forged instrument are separate and distinct offenses; conviction of one is not dependent upon conviction of the other. . . ." (p. 803.)

See, also, 22 C. J. S., Criminal Law, § 289, pp. 758, 759.

Mrs. Giddings next complains that the state was permitted, over objection, to question her on cross-examination with respect to a former conviction in Saline County for writing bad checks. Whether the checks were "insufficient" or "no account" is not disclosed. The state seriously contends the evidence was admissible for purposes of impeachment after Mrs. Giddings had opened up the subject on her direct examination.

So far as material here, K. S. A. 60-421 provides in substance that where the accused is a witness, no evidence of his conviction of crime shall be admissible for the sole purpose of impairing his credibility unless he has first introduced evidence solely for the purpose of supporting his credibility. Mrs. Giddings had testified on direct that she had never "pulled a check operation of this type before"; she thought she could do it because Zane, one of her former husbands, had done it several times. On cross-examination she was asked the following question and gave the following response:

"Q. Are you saying, did you state you never done anything like that before?
"A: I have never, no. I have never done anything like that before."

It appears to us that Mrs. Giddings opened up the question of her good character when she testified she had never pulled a check operation like this before, and that the state was thus entitled to rebut her testimony to such effect.

But the defendant argues that because she was not represented by counsel in the former case the conviction cannot be used for impeachment purposes under the rationale of *Gideon v. Wainwright*, 372 U. S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792. *Gideon* announced the rule that in the absence of waiver a felony conviction is invalid if it was obtained in a court which denied the accused the help of

a lawyer. That concept has since been applied to convictions for misdemeanor offenses resulting in imprisonment. (*Argersinger v. Hamlin,* 407 U. S. 25, 32 L. Ed. 2d 530, 92 S. Ct. 2006.)

Where a conviction is constitutionally infirm under the *Gideon* rule it has been held that it may not be employed against an accused for several purposes. In *Burgett v. Texas,* 389 U. S. 109, 19 L. Ed. 2d 319, 88 S. Ct. 258, it was said:

". . . To permit a conviction obtained in violation of *Gideon v. Wainwright* to be used against a person either to support guilt or enhance punishment for another offense (see *Greer v. Beto,* 384 U. S. 269) is to erode the principle of that case. . . ." (p. 115.)

In a more recent case, *Loper v. Beto,* 405 U. S. 473, 31 L. Ed. 2d 374, 92 S. Ct. 1014, the federal Supreme Court ruled that a constitutionally unsound conviction could not be used for purposes of impeaching the credibility of an accused. The essence of the court's holding is expressed in the following language:

"Unless *Burgett* is to be forsaken, the conclusion is inescapable that the use of convictions constitutionally invalid under *Gideon v. Wainwright* to impeach a defendant's credibility deprives him of due process of law. We can put the matter no better than in the words of the Court of Appeals for the First Circuit:

" 'We conclude that the *Burgett* rule against use of uncounseled convictions "to prove guilt" was intended to prohibit their use "to impeach credibility," for the obvious purpose and likely effect of impeaching the defendant's credibility is to imply, if not prove, guilt. Even if such prohibition was not originally contemplated, we fail to discern any distinction which would allow such invalid convictions to be used to impeach credibility. The absence of counsel impairs the reliability of such convictions just as much when used to impeach as when used as direct proof of guilt.' *Gilday v. Scafati,* 428 F. 2d 1027, 1029." (p. 483.)

Despite the *Loper* decision, we believe the trial court did not err in permitting cross-examination of Mrs. Giddings as to her prior conviction inasmuch as the factual situation here was significantly different from that in *Loper.* In the present case Mrs. Giddings, on direct examination, denied any prior misconduct similar to the offense for which she was being tried. That was not the situation in *Loper,* as footnote 11 (p. 482) makes clear. The footnote reads:

"This is not a case where the record of a prior conviction was used for the purpose of directly rebutting a specific false statement made from the witness stand. Cf. *Walker v. Follette,* 443 F. 2d 167, and see *Harris v. New York,* 401 U. S. 222; *Walder v. United States,* 347 U. S. 62. The previous convictions were used, rather, simply in an effort to convict Loper by blackening his character and thus damaging his general credibility in the eyes of the jury."

In our judgment the *Loper* decision was never intended to hamstring the state in countering or rebutting untruthful statements made by the defendant as a witness on his direct examination.

The case of *United States ex rel. Walker v. Follette*, 443 F. 2d 167, appears factually in point. In that habeas action the petitioner attacked his conviction on the ground that his Fourteenth Amendment right to a fair trial was violated when he was cross-examined concerning convictions in two prior cases in which he was not represented by counsel. Prior to his cross-examination the petitioner had testified on direct that he had never been convicted of a crime. In rejecting petitioner's claim of prejudice, the court said:

". . . If a defendant testifies, he puts his credibility in issue. If he lies in the course of his testimony, he lays himself open to attack by means of illegal evidence which otherwise the prosecution could not use against him. It follows that the district court correctly decided that petitioner's rights to a fair trial had not been infringed." (p. 170.)

In its opinion the court quoted from *Walder v. United States*, 347 U. S. 62, 98 L. Ed. 503, 74 S. Ct. 354, a narcotics case, where the defendant testified on direct that he had never possessed narcotics, and the government was allowed to show he had previously been found in possession of heroin. Walder claimed the government's evidence was inadmissible since the heroin was obtained from him without a valid search warrant. The court rejected this contention by saying:

" 'It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths.' " (p. 169.)

In large part, the decision in *United States ex rel. Walker v. Follette*, supra, was bottomed on *Harris v. New York*, 401 U. S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643. Harris was charged with making two separate sales of heroin, two days apart, to police undercover agents. He took the stand and flatly denied one sale but admitted selling, on the other date, two glassine bags containing what appeared to be heroin but which he said actually contained baking powder intended to deceive the purchaser. On cross-examination defendant was queried as to statements made to the police immediately following his arrest. The statements partially contradicted defendant's direct testimony, were made without benefit of a *Miranda* warning,

and were claimed by Harris to be inadmissible. In sustaining the *Harris* conviction, the Supreme Court spoke in this vein:

"Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury. See *United States v. Knox*, 396 U. S. 77 (1969); cf. *Dennis v. United States*, 384 U. S. 855 (1966). Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process. Had inconsistent statements been made by the accused to some third person, it could hardly be contended that the conflict could not be laid before the jury by way of cross-examination and impeachment.

"The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances. We hold, therefore, that petitioner's credibility was appropriately impeached by use of his earlier conflicting statements." (pp. 225, 226.)

So in this case, we hold that cross-examination of Mrs. Giddings as to a former conviction was proper to rebut her testimony given on direct examination.

A point is made concerning instructions. It is said the court erred in not instructing the jury with respect to the offense of temporary deprivation of property (K. S. A. 21-3705), which the defendant argues is a lesser included offense of forgery. It is true that trial courts are enjoined by K. S. A. 21-3107 (3) to instruct not only as to the crime charged but as to all lesser crimes of which the accused might be found guilty under the information and on the evidence adduced, "even though such instructions have not been requested or have been objected to." Even so, we believe the court did not err in failing to give a lesser included offense instruction here, because we cannot agree that the temporary deprivation of property is a lesser offense of forgery.

For an offense to be considered a lesser included offense of another, all the elements necessary to establish the lesser offense must be present and be required to prove the elements of the greater offense. (*State v. Woods*, 214 Kan. 739, 744, 522 P. 2d 967; *State v. Carpenter*, 215 Kan. 573, 579, 527 P. 2d 1333; *State v. Hreno*, 162 Ohio St. 193, 122 N. E. 2d 681; *State v. Waldenburg*, 9 Wash. App. 529, 533, 513 P. 2d 577.)

We have previously set out those sections of the forgery statute pertinent to this case (K. S. A. 21-3710 [1] [*a*] and [*b*]) and shall not repeat them at this time. A common component of the making

and the passing of a fictitious written instrument, both denominated as forgery under the statute, is the intent to defraud.

Unlawful deprivation of property, a misdemeanor, is defined in K. S. A. 21-3705:

"Unlawful deprivation of property is obtaining or exerting unauthorized control over property, with intent to deprive the owner of the temporary use thereof, without the owner's consent but not with the intent of depriving the owner permanently of the possession, use or benefit of his property."

It will be noted that while forgery requires an intent to defraud, unlawful deprivation of property does not. On the other hand, before there can be an unlawful deprivation of property, there must be an intent to deprive the owner of its temporary use, and this element is not found in forgery.

K. S. A. 21-3107 (2) has to do with included crimes or offenses and provides in material part:

". . . An included crime may be any of the following: (a) A lesser degree of the same crime;

"(b) An attempt to commit the crime charged;

"(c) An attempt to commit a lesser degree of the crime charged; or

"(d) A crime necessarily proved if the crime charged were proved."

Obviously, the temporary deprivation of property will not fit categories (a), (b) or (c). Nor do we think it comes within the aura of (d), since it cannot be said that all of its elements are necessary elements of the greater charge of forgery.

Historically the offense defined in 21-3705 succeeded a prior misdemeanor statute (former K. S. A. 21-544) defining an offense popularly known as "joyriding." Judicial Council notes, 1968, recite:

"The section represents an expansion of the former 'joyriding' statute, former K. S. A. 21-544, to include all classes of property."

We find nothing in our case law to suggest that the taking of personal property for temporary use under the "joyriding" statute was ever considered to be a lesser included offense of forgery, nor do we consider obtaining unauthorized control over property for temporary use, under K. S. A. 21-3705, to be an included offense of forgery. We are constrained to hold the trial court did not err in failing to instruct as to a lesser included offense.

After the jury had deliberated for some time, it requested a definition of the meaning of intent to defraud. The court responded by submitting the definition found in K. S. A. 21-3110 (9) which we have heretofore quoted.

The defendant now complains of the additional instruction, de-

scribing it as "inadequate" and "unresponsive." Her attack comes with singular lack of grace inasmuch as her own counsel suggested giving the statutory definition in response to the jury's request. A trial court is not to be mouse-trapped in such a cavalier fashion. Moreover, an instruction to which no objection was interposed at the trial will not be reviewed on appeal (*State v. Carter,* 148 Kan. 472, 83 P. 2d 689; *State v. Potts,* 205 Kan. 47, 468 P. 2d 78) unless the instruction is clearly erroneous. (*State v. Severns,* 158 Kan. 453, 148 P. 2d 488; *State v. Ragland,* 173 Kan. 265, 246 P. 2d 276.) We do not view the additional instruction setting forth the statutory definition of intent to defraud as being inadequate, unresponsive or clearly erroneous.

Other points raised by defendant have been considered, but are found to be without merit. No good purpose would be served by encumbering this opinion with further comment concerning them.

The judgment is affirmed as to count one. As to count two the judgment is reversed and the cause is remanded with directions to set aside the conviction on that count.