**Hector RIVERA, Petitioner,**

v.

**WARDEN, ATTICA CORRECTIONAL FACILITY, Respondent.**

**No. 76 C 1284.**

United States District Court, E. D. New York.

May 9, 1977.

Hector Rivera, petitioner, pro se.

Louis J. Lefkowitz, Atty. Gen., of the State of New York, New York City, for respondent; Ralph McMurry, Asst. Atty, Gen., New York City, of counsel.

MISHLER, Chief Judge.

Petitioner seeks a writ of habeas corpus. He is presently in the Attica Correctional Facility pursuant to his .conviction in Kings County Supreme Court on December 26, 1972. He was found guilty of felony murder after a jury trial, and received a sentence of twenty-five years to life imprisonment. On January 19, 1976, the Appellate Division unanimously affirmed the conviction, and, on April 29, 1976, the Court of Appeals denied permission to appeal. The claims presented by this petition were raised on the appeal to the Appellate Division. ·Since available state remedies have been exhausted by petitioner, we turn to a consideration of his claims, 28 U.S.C. § 2254(b) and (c).

### THE FACTS ·

On the evening of June 12, 1971, Jesus and Alicia Cordova were working in their bodega (grocery store), located at 2911 Mer-

maid Avenue in Brooklyn. At approximately 9:00 P.M., the Cordovas were behind the counter, which ran from the front of the store to the rear, along the right side (walking through the door from the street). A part time employee, John Figuroa, was also in the store. According to the testimony of Mrs. Cordova and Mr. Figuroa, the petitioner walked into the store and approached Mr. Cordova, gun in hand. The petitioner said, "give the wallet, give the wallet, give the wallet" (Tr.129). A shot was fired, striking Mr. Cordova. The petitioner then pointed the gun at Mrs. Cordova, saying, "you call the police, I kill you, too" (Tr.114). He demanded money, and Mrs. Cordova threw a bag of coins to him. He then left the store. Mr. Cordova later died from his gunshot wound. The petitioner was arrested on June 24, 1971.

The petitioner, who testified in his own behalf, stated that he did not have a gun when he entered the bodega (Tr.196–97). He claimed that a companion, standing across the street, had fired the shot that killed Mr. Cordova. The petitioner admitted that he was a heroin addict with a habit that cost him between $30–40 per day.

*DISCUSSION*

The most significant claims of error involve a statement made by the petitioner to an assistant district attorney named Leon Bornstein. On July 28, 1971, Bornstein interviewed the petitioner at 120 Schermerhorn Street in Brooklyn, following his arraignment on robbery and assault charges, but prior to arraignment on the homicide charge. According to Bornstein, the petitioner, who was not accompanied by counsel at this interview, admitted that he had a gun when he entered the bodega (Tr.234–35). This statement was used on cross-examination of petitioner and in the prosecution's rebuttal to impeach the petitioner's testimony that he had not been carrying a gun.

The petitioner claims that he was denied a fair trial because (1) the prosecutor failed to disclose the Bornstein statement to the defense prior to trial; (2) the trial judge failed to hold a hearing to determine the admissibility of the statement; and (3) the trial court failed to instruct the jury that the Bornstein statement was not to be considered as evidence of guilt. In its brief before the Appellate Division, the District Attorney conceded that the denial of a hearing and failure to instruct the jury were errors. The respondent in the present case makes no such concession.

■ For the most part, these claims warrant little discussion. The record reveals that prior to the trial, the prosecutor did reveal the existence of the Bornstein statement to the defense, and that the defense counsel requested a *Huntley* hearing on that statement (Tr.7–8). Moreover, this claim has been held not to raise an issue cognizable in a habeas corpus proceeding. *United States ex rel. Cummings v. Zelker,* 329 F.Supp. 4, 8 (E.D.N.Y.1971), aff'd, 455 F.2d 714 (2d Cir.), *cert. denied,* 406 U.S. 927, 92 S.Ct. 1800, 32 L.Ed.2d 128 (1972).

■ As to the failure to give limiting instructions, this claim does not raise a constitutional issue. In *United States ex rel. Wright v. LaVallee,* 471 F.2d 123 (2d Cir. 1972), *cert. denied,* 414 U.S. 867, 94 S.Ct. 167, 38 L.Ed.2d 87 (1973), the petitioner claimed in a habeas application that the trial court erred in failing to instruct the jury that an otherwise inadmissible statement made by petitioner must be considered only in evaluating his testimony. The Court rejected this claim, stating that

[w]hile the better practice would have been to give an instruction to the jury limiting its use of the statement to evaluation of petitioner's credibility . . . ., we are satisfied that under the circumstances of this case, where the shootings were admitted, the jury could only have used the statement to appraise petitioner's trial testimony as to how they happened, a use which [*Harris v. United States,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971)] permits.

471 F.2d at 127.

■ Similarly, in this case, even in the absence of limiting instructions, it was clear that the Bornstein admission was employed

to contradict the petitioner's testimony that he was not carrying a gun when he entered the Cordovas' bodega. Moreover, the defense counsel failed to request limiting instructions following the testimony by Bornstein and did not object to the trial court's charge to the jury (Tr.292). The failure to object constitutes a waiver that precludes the assertion of the claim in a habeas proceeding. *United States ex rel. Satz v. Mancusi,* 414 F.2d 90, 92 (2d Cir. 1969); *United States v. Nasta,* 398 F.2d 283, 285 (2d Cir. 1968); *United States v. Curry,* 358 F.2d 904, 912 (2d Cir. 1965), *cert. denied,* 385 U.S. 873, 87 S.Ct. 147, 17 L.Ed.2d 100 (1966).

This takes us to the more substantial claim that admission of the Bornstein statement, without providing a *Huntley* hearing, violated the petitioner's due process right to a fair trial. Analysis must begin with *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). There, the Supreme Court ruled unconstitutional the New York procedure for determining the voluntariness of a confession. Under New York law at that time, if the evidence raised a question as to the voluntariness of the confession, the trial judge was required to instruct the jury to determine the voluntary character of the confession as well as its truthfulness. The problem the Court found in this procedure was that the jury's attitude as to the reliability of the confession inevitably prejudices the determination as to voluntariness:

> [T]he obvious and serious danger is that the jury disregarded or disbelieved Jackson's testimony pertaining to the [circumstances of the] confession because it believed he had done precisely what he was charged with doing.

*Id.* at 383, 84 S.Ct. at 1784. Accordingly, Jackson's habeas corpus petition was granted and the case remanded to allow the state an opportunity to give Jackson a hearing on the voluntariness of his confession. *See United States v. Silva,* 418 F.2d 328, 330 (2d Cir. 1969).

■ In *People v. Huntley,* 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965), the New York Court of Appeals, in response to

*Jackson,* adopted the so-called Massachusetts procedure, which allows the jury to decide the issue of voluntariness only if the trial judge, after a hearing, has found the confession to be voluntary. *Id.* at 78, 255 N.Y.S.2d 838, 204 N.E.2d 179. Thus, in seeking a *Huntley* hearing, the petitioner's counsel in this case was asking for a determination of voluntariness. The reliability of the confession was, and is, a question for the jury.

Seven years after the *Jackson* decision the Supreme Court decided in *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), that the credibility of a defendant who testifies at his own trial may be impeached by a "statement made by him to police under circumstances rendering it inadmissible to establish the prosecution's case in chief under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)." *Id.* at 222, 91 S.Ct. at 644. The *Miranda* decision, the *Harris* Court ruled, did not bar the use of uncounseled statements for any purpose

> provided of course that the trustworthiness of the evidence satisfies legal standards.

401 U.S. at 225, 91 S.Ct. at 645. Significantly, the petitioner in *Harris* made "no claim that the statements made to the police were coerced or involuntary." *Id. See generally* Korman, *A Prosecutor's View of Miranda Rule,* 173 N.Y.L.J., at 1 (June 25, 1975).

More recently, in *Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975), the Court affirmed the principle of *Harris,* ruling admissible for impeachment purposes inculpatory information elicited by the police, who interrogated the defendant after he had received proper *Miranda* warnings and had requested the presence of his attorney. The Court noted the absence of any evidence that the defendant's statements were involuntary or coerced, pointing out that

> [i]f in a given case, the [police] officer's conduct amounts to abuse, that case, like those involving coercion or duress, may be taken care of when it arises measured

by the *traditional standards of evaluating voluntariness and trustworthiness.*

*Id.* at 723, 95 S.Ct. at 1221 (emphasis supplied).

■ The language of *Haas* and *Harris,* although not crystal clear, suggests strongly that in allowing impeachment of a defendant by his own otherwise inadmissible statements, "otherwise inadmissible" means statements taken in violation of *Miranda. See United States v. Tesack,* 538 F.2d 1068,. 1070–71 (4th Cir. 1976); *United States v. Smith,* 538 F.2d 1359, 1362–63 (9th Cir. 1976); *United States v. Nussen,* 531 F.2d 15, 25 (2d Cir. 1976) (Mansfield, J., dissenting); *United States v. Caniff,* 521 F.2d 565, 571 n. 5 (2d Cir. 1975), *cert. denied,* 423 U.S. 1059, 96 S.Ct. 796, 46 L.Ed.2d 650 (1976); *United States v. Anderson,* 162 U.S.App. D.C. 305, 498 F.2d 1038, 1048 & n. 7 (1974), *aff'd,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975); *United States v. Bernett,* 161 U.S.App.D.C. 363, 495 F.2d 943, 948 (1974). If the statement would not have been admissible under pre-*Miranda* standards, it may not be used to impeach. *LaFrance v. Bohlinger,* 499 F.2d 29, 35 (1st Cir.), *cert. denied,* 419 U.S. 1080, 95 S.Ct. 669, 42 L.Ed.2d 674 (1974), *citing United States v. Curry, supra* at 912. Even prior to *Miranda,* the use of coerced confessions, trustworthy or not, was forbidden "because the method used to extract them offends constitutional principles." *Lego v. Twomey,* 404 U.S. 477, 485, 92 S.Ct. 619, 624, 30 L.Ed.2d 618 (1972), *citing Rogers v. Richmond,* 365 U.S. 534, 540–41, 81 S.Ct. 735, 739, 5 L.Ed.2d 760 (1961). And *Jackson v. Denno,* a pre-*Miranda* case, forbids the use of a confession if its voluntariness will be determined by the jury alone. *See Sims v. Georgia,* 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967). Thus, a defendant who claims the government unconstitutionally coerced incriminating statements from him is entitled to a determination of voluntariness that satisfies the requirements of *Jackson v. Denno* before those statements may be used for impeachment purposes.

■ In the present case, the petitioner's lawyer requested a *Huntley* hearing on the Bornstein statements (Tr.229). Earlier, he had objected to the statements on the ground, *inter alia,* "that the [petitioner] was not physically healthy at [the time of the questioning]" (Tr.225). The conclusion is inescapable that the objection was not merely on the ground of a *Miranda* violation, but also, unlike the situation *in Harris,* on the ground of coercion. Although the trial judge charged the jury on the question of voluntariness, in the absence of a separate determination by the trial judge of the voluntariness of the confession, the jury could not properly consider this issue. The petitioner was entitled to a separate determination of the voluntariness of the confession before it was admitted for impeachment purposes.

Although the failure to hold a *Huntley* hearing was error, in view of the overwhelming evidence against petitioner, it was an error that was harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Two eyewitnesses testified that the petitioner had been carrying a gun when he entered the bodega and that he had shot Mr. Cordova. Shortly after his arrest, prior to the Bornstein interview, petitioner made a confession to a detective. The confession was found, after a *Huntley* hearing (Tr.63–64), to be voluntary and was admitted on the prosecution's direct case. The detective testified that the petitioner confessed to entering the store with a gun and shooting the proprietor (Tr.138–44). The Bornstein statement did not put any matters before the jury that had not been testified to already, and in view of the overwhelming evidence of petitioner's guilt, the admission of the statement without a *Huntley* hearing must be considered harmless error.

We find the other claims to lack merit and, accordingly, the petition for a writ of habeas corpus is denied, and it is

SO ORDERED.